* Parker, C. J.
The first objection to a recovery by the plaintiff, and the one upon which the principal reliance seemed to be placed at the argument, is that the act of Grafton, in endorsing Cushing’s name upon the note, was a forgery by him; and that no civil action can arise out of a forgery, or be founded on a criminal transaction, in which the party sued was the agent.
The authorities cited to show that such is the common law of England are not very decisive on the subject. It is said, arguendo, by several of the judges, in delivering their opinions before the House of Lords in the famous case of Gibson & Al. vs. Minet & Al., that it is against the policy of the law to permit a party, who has suffered by the crime of another, to seek a remedy by a civil action ; because he would be the less ready to prosecute, and bring to justice, the offender. And in the case of Tatlock vs. Harris, similar expressions are dropped; and in some other cases it is observed that the civil remedy is merged in a felony.
(a) To what extent the doctrine is now admitted in England, is matter of doubt. If it is limited to the principle that a man shall not derive his title to an action through a felony,, perhaps this may be universally true. But if it would prohibit one from a remedy, by a civil action, for an injury occasioned by the crime of another, it is by no means clear that it is in force in England. Certainly it is not in this country. In the case of the lamb driven to market, stated in Buller’s Nisi Prius, 131, an action for money had and *305 received may be brought by the owner for the price; and it is there said that, if the lamb were stolen, trover would be the proper action. And in the case of the nurse who ran off with the dead man’s money, also mentioned in Butter, 130, the administrator had a like action.
These cases show that the doctrine of merger, by felony, of a civil action, is not always to be set up in defence, against an action for compensation of an injury, the commission of which may have been criminal.
* The common actions of trespass for assault and battery, and of slander in case of libel, also prove that the general position, that where the injury sustained is occasioned by crime there is no civil action, is not universally true. T apprehend that the doctrine, if true at all, is limited to the case of robberies and larcenies, which by the common law are felonies; and that the civil action was prohibited, lest it should be, in effect, like a composition with a felon — the injured party being willing to reimburse himself, and careless of the general interest, which requires the public punishment of the offender. And that this is the foundation of the doctrine may be inferred from the fact, that the party robbed was, by the St at. 21 TI. 8, to have reparation from the estate of the offender, upon conviction; and from the further fact, that trespass would lie on a felony of which the party had been con victed, as appears in Roll. Abr. 55, Trespass, pl. 20.
It is possible, also, that another circumstance may have given rise to the doctrine. By the common law, the lands and goods of a felon were forfeited to the crown, and death also was the punishment. Now, to give an action, where the body could not be taken in execution, and where all the lands and effects belonged to the king, would be entirely fruitless. No remedy whatever could be had; and the provision, by statute, for a recompense out of the estate, was the only relief which the injured party could have.
These reasons do not exist with us. There is no forfeiture of lands or goods on conviction of crimes; nor is there any recompense provided by the public; nor is the criminal party punished with death; —so that, in many cases, the injured party may have a remedy against the person, and in all cases against the estate of the person, who did the wrong; and this is surely better than to suffer his estate to go to his heirs, perhaps swelled by the very depredations for which, it is said, he is not answerable civiliter.
It is laid down, in Bac. Air. tit. Actions on the Case, K., that a person guilty of felony, and pardoned or burnt in the * hand, may be proceeded against in a civil action at the suit of the party injured; although it is said that no action can be brought whilst the party is under indictment for the *306 same crime. And the reason given is, that it might hinder all exemplary punishment; and Style, 346, is cited for this latter position. Perhaps the true reason is that, until the party is pardoned, or has received the benefit of clergy, it is to be supposed that he will forfeit his life, and all his estate to the king.
But whatever may have been the reason on which the common-law doctrine was founded, it is plain that the reason has ceased with us; and cessante ratione, cessat et ipse lex. In the few cases of felony which are punished with death here, it may be that the principle is still in force s.o far as that the felon may not be sued in a civil action until after acquittal or pardon. For, if convicted, he will be executed ; and as all felonies include a trespass, the action dies with him. But there seems to be no reason why the injured party may not have an action for his damages, where the wrongdoer is living, and has estate sufficient to compensate the wrong.
In the action before us, the objection is that the plaintiff cannot maintain the action, because the money sued for was obtained from him through the instrumentality of a forgery by one of the defendants. As far forth as the objection goes against the recovery by the plaintiff, as endorsee of the note, it is well founded. For, to maintain the action in that shape, he must prove the hand-writing of Cushing, the supposed endorser; which he cannot do, as Cushing’s name was forged.
But we see no objection to his recovering upon the money counts. Grafton received the money of the plaintiff upon a false pretence, having offered the note as endorsed by Cushing; and the money so received was instantly, in the eye of the law, received to the use of the plaintiff. He does not claim it through or under a forgery; but merely on the ground that money was advanced by him on the * faith of a security which turns out, by the fraud of Grafton, to be wholly worthless; and so far the case is, in all respects, like the case, decided before by us, of The Manufacturers’ and Mechanics’ Bank vs. the present defendants. (9)
The only difference between the two cases is that, in the case referred to, there was direct evidence that the money went to the use of the house of Gore Ef Grafton; so that there was no doubt but both the partners were liable. In the present case there is no such evidence; and we are now to consider whether, under the circumstances, Gore is equally liable with Grafton to the plaintiff's demand.
It seems to be a well-settled principle, that general copartners are bound by the acts of each other, when the name of the firm or house is pledged, to any extent; unless the person, who takes a security *307 of that sort, has knowledge of some limitation of the authority of the partner who undertakes to bind the firm. This principle is essential to commercial security, and ought not to be shaken. The cases of Swan & Al. vs. Steel & Al, and Wells vs. Masterman & A., cited at the bar, establish this principle—which is also laid down in Watson’s Law of Partnership, 105, 2:29.
Grafton, therefore, by his note, to which he put the signature of Gore Sf Grafton, bound Gore as well as himself, unless the circumstance of the forgery of Cushing’s name makes a difference; and we think it does not.
When the note was signed, payable to Cushvng, no crime was committed. The crime was in the subsequent act, the endorsement of Cushing’s name. Had Cushing taken the note for a debt due to him, it would have been good against the house. When it was offered to the plaintiff by the broker, it was still the note of Gore Sf Grafton, notwithstanding the forgery of Cushing’s name. The plaintiff probably relied on it, as a good note of Gore Sf Grafton. He had no reason to suspect it; for the broker, who delivered it to him, received it from one of the house. He advanced his money upon the faith of both names; for both were then in good credit. Had it been endorsed by * Cushing, and afterwards the name of another been forged as second endorser, the plaintiff might have maintained his action upon the note itself, as endorsee of Cushing. It is merely because he cannot derive a title through Cushing, that he cannot support the count upon the note. Shall he, for this cause, be deprived of his money ?
It has been argued that, as the plaintiff is obliged to resort to his money counts, to recover against Gore, he ought to show that he is entitled on grounds of equity, as in the case of the bank before mentioned, where there was proof that the money went to the use of the house. But we think that not necessary. The liability of the defendant Gore is derived from the confidence he reposed in Grafton, and from the authority given him to raise money upon the credit of the bouse. It is impossible to ascertain whether the money was applied by Grafton to the use of the copartnership or not. It may have gone to pay some pressing debt against the firm But whether it did or not, it being obtained upon a note made pay able by the company, Gore must be considered answerable, (a)
Suppose one partner borrows money on pretence that it is for the use of the company, the person advancing it having no knowledge that it is not to be so appropriated; but in fact it is applied to the private use of the partner to whom it is advanced; shall not the *308 lender recover against both ? The truth is, there seems to be no limitation of the authority of any one of a copartnership over the credit of the whole, when dealing with persons as one of a house — such persons having no grounds to apprehend that the one with whom they deal is abusing the confidence of the others. (b)

Defendants defaulted.

 Vide Stone vs. Marsh, 6 B. & Cr 551. — Davis vs. The Bank of England, 2 Bingh. 393. — Crosby vs. Long, 12 East, 409.

 Etheridge vs. Winship & Al. 9 Mass. Rep. 272

 Vide Stone vs. Marsh, 6 B. & Cr. 551. — Ry. & M. 364. — Rapp vs. Lapham, 9 S. g/ A. 795. — Hume vs. Bolland, 1 R. Sf M. 371.