## ROBINSON *v.* SKIPWORTH.

STOLEN PROPERTY.—*A* bought a stolen horse at public auction, kept him for several months, and sold him in good faith, without any knowledge that the horse had been stolen, or any notice of plaintiff's claim.

*Held*, that he was responsible to the owner of the horse for its value. Page 313.

SAME.—The *English* doctrine, that the owner of the stolen property must prosecute the felon to conviction before he can have a civil action to recover his goods, never had any application in this country, and in *England* is now confined to cases in which the felon is a necessary party. Page 313.

CONVERSION.—There must be an act done to convert one thing into another, and a converting into money by sale has always been held to be within the definition. Page 315.

SAME—DEMAND.—Where there has been an actual conversion no demand is necessary. A demand and refusal are evidence of a conversion, but not the only evidence. Page 315.

Robinson *v.* Skipworth.

PLEADINGS BEFORE JUSTICES OF THE PEACE.—Before a justice of the peace, the form of pleading is not material to the rights of the parties     Page 316.

APPEALS FROM JUSTICES—COSTS.—On appeal from a justice of the peace, taken by the plaintiff, where the judgment is not increased $5 or upward, the appellant must pay the costs of the appeal.     Page 316.

SAME—STATUTE CONSTRUED.—The matter embraced in section 70, 2 G. & H. 599, is properly embraced in the subject of the act, and the section is constitutional. *Kuhns* v. *Krammis,* 20 Ind. 490, overruled.     Page 316.

CONSTITUTIONAL CONSTRUCTION.—Section 19, article 4, of the constitution only requires the subject of an act, and not the matters properly connected therewith, to be expressed in the title.     Page 317.

APPEAL from the *Vanderburgh* Common Pleas.

GREGORY, J.—*Skipworth* sued *Robinson* before a justice of the peace, on the following cause of action: "Mr. *Andrew L. Robinson* to *Joseph Skipworth, Dr.* To one iron-gray horse, $130. Par. 2. To money had and received for the use of the plaintiff, and demands judgment for *Joseph Skipworth,* $130." The justice rendered a judgment for the plaintiff for $100. The plaintiff appeaed to the court of Common Pleas. Trial by the court; finding and judgment for the plaintiff for $100, *and costs of suit.* Motion for a new trial by defendant overruled, to which defendant excepted, and filed his bill of exceptions.

The evidence is in the record. The testimony shows that the plaintiff resides in *Illinois;* that he is the owner of the horse in question; that some time in *October,* 1863, the horse was stolen; that in the same month the defendant bought the horse, at public auction in the city of *Evansville,* for $47; that the defendant, in *April* following, sold the horse to the *United States* quarter-master at that city, and realized from such sale $117; that the defendant had no knowledge of the ownership of the horse, and acted in good faith in the purchase and sale thereof. The value of the horse is variously estimated, and there is a conflict in the evidence as to whether there was a demand made by the plaintiff on the defendant for the horse or his value before suit brought; but if such demand

was necessary, then the defendant is entitled to a new trial on the ground of surprise, set forth in his motion, supported by his affidavit.

It is contended by the appellant, that having bought the property in good faith before any claim was made upon him, and before he received any notice of the theft or of *Skipworth's* claim, he is not legally liable to him, nor to any one except to his own vendee, in case he shall be dispossessed of the property by some one having a better title.   This position can not be sustained.

The case of *Hoffman and Others* v. *Carow,* 22 Wendell's Rep. 284, in its equities, is a much stronger case for the defendant than the one at bar; there an *auctioneer* had, in *good faith* and *without notice* of the felony, sold the stolen goods, and paid over the proceeds to the thief.   Yet it was held, both in the Supreme Court and the Court for the Correction of Errors, that the *auctioneer* was liable to the owner for the value of the goods.

The only difficulty that the court had in that case was the authority of the cases of *Parker* v. *Patrick,* 5 Term, 175, and *Gimson* v. *Woodfull,* 2 Car. & Payne, 41, in which it was *held* that, before the owner of stolen property can have a civil action, he must prosecute the felon to conviction.   But this doctrine never had any application in this country; it grew up in *England,* under their peculiar law that the lands and goods of a felon were forfeited to the crown, and death also was the punishment.   Now, to give an action where the body could not be taken in execution, and where all the lands and effects belonged to the king, would be entirely fruitless.   No remedy whatever could be had, and the provision by statute for a recompense out of the estate, was the only relief which the injured party could have.   Per *Parker,* Ch. J., in the case of *Boardman* v. *Gore and Another,* 15 Mass. 330.   But in *England* this doctrine is now confined to the felon, and cases in which the felon is a necessary party.

In the late case of *White* v. *Spettigue,* 13 Meeson &

Welsby, 603, it was *held*, that an action of trover is maintainable to recover the value of goods which have been stolen from the plaintiff, and which the defendant has innocently purchased, although no steps have been taken to bring the thief to justice; for the obligation which the law imposes on a person to prosecute the party who has stolen his goods, does not apply where the action is against a third party, innocent of the felony. At the trial before *Rolfe*, B., it appeared that the plaintiff, who was a solicitor, had missed, from day to day, several volumes of the statutes at large, which he suspected to have been stolen by a young man who was at that time a clerk in his office. The defendant, who was a bookseller, carrying on business in *London*, became possessed of the books by a *bona fide* purchase of them on different days, from a young man who brought them to his shop and offered them for sale. The defendant having sold the books, this action was brought to recover the value of them.

*Merewether*, in support of a motion for a new trial, cited the case of *Gimson* v. *Woodfull*. *Pollock*, C. B., said: " The case of *Stone* v. *Marsh*, 6 Barn. & Cress. 551, is a direct authority against the doctrine you are contending for. In that case, Lord *Tenderden* says: ' There is, indeed, another rule of the law of *England;* viz: that a man shall not be allowed to make a felony the foundation of a civil action; not that he shall not maintain a civil action to recover from a third and innocent person, that which has been feloniously taken from him, for this he may do if there has not been a sale in market overt, but that he shall not sue the felon; and it may be admitted that he shall not sue others, together with the felon, in a proceeding to which the felon is a necessary party, and wherein his claim appears, by his own showing, to be founded on the felony of the defendant. *Gibson* v. *Minet*, 1 H. Black. 612. This is the whole extent of the rule. The rule is founded on a principle of public policy, and where the

public policy ceases to operate, the rule shall cease also. This point was very ably shown in the argument on the behalf of the plaintiffs. The authorities were quoted, and need not be repeated; and it was shown that the familiar phrase, "the action is merged in the felony," is not at all times and literally true. Now, public policy requires that offenders against the law shall be brought to justice, and for that reason a man is not permitted to abstain from prosecuting an offender by receiving back stolen property, or an equivalent or compensation for a felony, without suit, and of course can not be allowed to maintain a suit for such a purpose. But it is not contended that any such policy or rule is applicable to the present case; the offender has suffered the extreme sentence of the law for another offense of the same kind.' That is a case precisely in point, and it is confirmed by the decision of the House of Lords, in the case of *Marsh* v. *Keating*, 1 Bing. N. C. 198; 1 Scott, 5."

The appellant contends that having bought and sold the horse in good faith, and without any notice whatever of *Skipworth's* claim, *a demand should have been made upon him before beginning an action;* and the case of *Wood* v. *Cohen and Another*, 6 Ind. 455, is cited in support of this position. In that case *Cohen*, the *bona fide* purchaser of the horse, had not sold him, but had possession of the horse at the time the action was commenced.

*Robinson* acquired no property in the horse by his purchase, and the sale of the horse by him was a conversion. According to Lord *Coke*, in the oldest leading case on this head, which still preserves its authority, (*Isaac* v. *Clark*, 1 Bulst. 312,) "there must be an act done to convert one thing into another," and a converting into money by sale has always been held to be within this definition. The cases of *Hoffman and Others* v. *Carow*, and *White* v. *Spettigue*, *supra*, as well as the case of *Peer* v. *Humphrey*, 2 Ald. & Ell. 590, recognize this same doctrine. Where there has been an actual conversion, no demand is neces-

sary. A demand and refusal are evidence of a conversion, but not the only evidence.

As this suit was commenced before a justice of the peace, the form of the pleading is not material to the rights of the parties. And there is no defect in the pleading that is not cured by statute. 2 G. & H. 278, sec. 580; *Ib.* 122, sec. 101.

But the court committed an error in rendering judgment *for costs* against the appellant. 2 G. & H. 597, sec. 70. The judgment of the justice was not increased $5 or upward, and the appeal was taken by the plaintiff. On the authority of the case of *Reams* v. *The State*, at this term, the case of *Kuhns* v. *Krammis*, 20 Ind. 490, is overruled.

Is the matter embraced in section 70, *supra*, properly connected with the subject of the act?

The subject of the act is "The election and qualification of justices of the peace, and defining their jurisdiction, powers, and duties in civil cases." Appeals from their judgments in civil cases are provided for, and the mode of proceeding in such cases in the Circuit and Common Pleas Courts is prescribed. Section 67 is as follows: "Such cause shall stand for trial in the Court of Common Pleas or Circuit Court, whenever such transcript has been filed ten days before the first day of the term thereof, and be there tried under the same rules and regulations prescribed for trials before justices; and amendments of the pleadings may be made on such terms, as to costs and continuances, as the court may order." This latter section is as foreign to the subject of the act as section 70, *supra*, and yet the learned judge who delivered the opinion of the court in *Kuhns* v. *Krammis*, *supra*, says: "Appeals from justices of the peace, by our law, entirely remove the causes appealed from the justices. They are not tried upon error, but *de novo*, and are never returned to the justices. The final judgment regulating the rights of the parties is rendered in the Appellate Court." And indeed the decision is made to turn on this proposition; for, continues the learned

judge, " Such being the case, all legislation touching the manner of rendering judgment in such cases should be in the acts regulating proceedings in the Appellate Courts; and provisions in the justices' act, assuming to prescribe the practice in the trial and judgment of such causes in the appellate courts, is in no manner connected with the act regulating the practice in justices' courts." But is there not a natural and proper connection between this matter and the subject of the act? It is plain that to constitute this connection, the matter need not form any part of the subject. For it is well said by Mr. Justice *Perkins*, in delivering the opinion of this court in the case of *The Bank of the State of Indiana* v. *The City of New Albany*, 11 Ind. 139, that, " As to sec. 19, art. 4, referred to, it provides that ' every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title.' The title of the act incorporating the bank is, ' An act to establish a bank with branches.' We have already seen that the extent and manner of taxing the capital stock of the bank, when created, is a matter properly connected with the subject of chartering the institution, *and it is only the subject, and not the matters properly connected therewith, that must be expressed in the title.*" The chain connecting the matter of section 70, *supra*, with the subject of the act is unbroken. We follow the case in all its stages, from the commencement of the action to the final judgment of the justice; then follows the appeal; then the proceedings in the appellate court, step by step, to final judgment, including that for the costs in the action. We might pause and inquire, is this case within the evils intended to be guarded against by section 19, article 4, of the constitution of *Indiana?* The history of the legislation of this state, prior to the adoption of the present constitution, will answer this question.

The numerous attempts to procure improper legislation under false titles; the oft-repeated efforts, sometimes too successful, to incorporate into popular measures some

foreign matter that could not otherwise become a law; and the blending of two or more totally distinct measures in one act, neither of which could succeed alone, make up the record that finally resulted in the incorporation into our fundamental law of the section referred to. It was not the design of the framers of our constitution to put a clog upon fair and honest legislation; but to give ample scope for each act, to embrace all proper matters connected with the one subject embraced in it.

The act in question was passed at the first session of the legislature under the present constitution; many of its members had constituted a part of the convention which framed it, and all had, as citizens of the state, participated in its adoption. The section of the act of *June* 9, 1852, under consideration, had been acted on, and recognized as valid, for more than ten years, by all the courts of this state, including this court; under such circumstances, the court of last resort ought not to declare the section referred to unconstitutional, unless the question is free from every doubt; but it is proper for us to say that we entertain no doubt on the subject, and with deference, we express our surprise at the ruling in the case of *Kuhns* v. *Krammis, supra.*

The judgment of Common Pleas Court is reversed *as to* the *costs*, and affirmed as to the residue; and cause remanded to said court, with directions to render judgment for appellant for *his costs* in said court. Costs against the appellee here.

*A. L. Robinson*, for appellant.
*Charles Denby*, for appellee.