## HINGLE v. THE STATE.

### THREE CASES.

CONSTITUTIONAL CONSTRUCTION—TITLES OF LAWS.—The words "subject" and "matters," as used in sec. 19, art. 4 of the Constitution, which provides that "Every act shall embrace but one *subject*, and *matters* properly connected therewith, which *subject* shall be expressed in the title," are as nearly synonymous as possible; the one, "*subject*," being used to indicate the chief thing about which legislation is had, and the other, "*matters*," things which are secondary, subordinate or incidental. Page 31.

SAME.—The evils intended to be prevented by this section were: 1st, the passage of laws under false and delusive titles, whereby members of the Legislature might be deceived into the support of them; and, 2d, the combining together, in one act, of two or more subjects, having no relation to each other, by which means members might be constrained to support measures obnoxious to them, in order to procure such legislation as they wished. Page 32.

SAME.—The insertion in the act to regulate the liquor traffic, of a section conferring upon particular courts jurisdiction of cases prosecuted for its

violation, (1 G. & H. sec. 14, p. 615,) is not in violation of sec. 19 art. 4 of the Constitution, but is matter properly connected with the subject of the act. *Lauer* v. *The State*, 22 Ind. 461, overruled.

SAME—SPECIAL LAWS.—A special law, within the meaning of sec. 22 art. 4 of the Constitution, is such an act as at common law the courts would not have taken notice of, unless specially pleaded and proved, as any other fact, and sec. 14 of the liquor law of March 5, 1859, *supra*, which confers concurrent jurisdiction on the circuit and common pleas courts for the trial of offenses under that law, is not special legislation within the prohibition of the Constitution.

APPEAL from the *Marion* Circuit Court.

FRAZER, J.—These cases involve the question of the constitutionality of the fourteenth section of what is known as the liquor law of 1859. That section attempts to confer jurisdiction of cases prosecuted for the violation of the act, upon both the common pleas and circuit courts.

The appellant makes two objections to the constitutionality of the section in question, and both are pressed with much zeal, and supported by an argument of great plausibility. We will consider these objections in the order in which they are made.

1. That the section is unconstitutional because the matter embraced in it is not properly connected with the principal subject of the act; and, indeed, forms a distinct subject of itself.

The question thus presented is not here for the first time. In *Thomasson* v. *The State*, 15 Ind. 449, it was considered in a general way, and the section held to be free from valid constitutional objection. That case was ably argued, and was, evidently, carefully considered. Indeed, six other cases, involving the same question, were decided at the same time. It ought to be stated, however, that the particular argument now under examination may not, in that case, have been brought to the attention of the court. In *Lauer* v. *The State*, 22 Ind. 461, the ruling was the other way, and upon this point *Thomasson* v. *The State*, was overruled. The opinion, in the latter case, is very brief, the reasoning unsatisfactory, and we believe that the decision was not generally

expected by the bar.   We think it was not regarded as put-
ting the question fully at rest.   Among the first cases
which came before the court, as now composed, was *Reams*
v. *The State*, 23 Ind. 111, in which the same question was in-
volved, and the argument now under consideration was
pressed.   We gave it that careful examination which such
a question ought always to receive, and the more because
of the previous decisions of the court upon it.   The result
was, that we held sec. 14 free from conflict with the
constitution.   Afterward, in *Robinson* v. *Skipworth*, 23 Ind.
311, we found ourselves again required to examine and in-
terpret that clause of the constitution (art. iv. sec. 19.)   In
that opinion we expressed more fully than before, our views
of the purpose and meaning of the constitutional require-
ment.   Desiring, however, the aid of every argument which
might assist us, we have, in these, and several other cases,
deemed the question still open, and have delayed this de-
cision in order to give opportunity for the fullest presenta-
tion of every consideration which might weigh against the
opinion, on this point, expressed by us heretofore.   We are
now favored with a discussion which, probably, leaves little
to be said upon that side of the question, and we find our-
selves but confirmed in the opinion expressed in the cases
alluded to.

Section 19 art. iv. of the constitution, after having been
in force thirteen years, and after having been considered
and applied by this court no less than twenty-six times,
seems to be as far from being settled in its meaning and ap-
plication as it was in the beginning.   The cases which have
not been expressly overruled, and which stand to guide the
legislature, and the other courts, seem to us not easily
reconcilable with each other, upon any principle.   A few
cases have been decided here, in the decision of which the
court has laid down rules, which, if adhered to, would
probably have prevented confusion, but, afterward, cases
have been decided in apparent antagonism therewith, but
without expressly calling in question the previous rulings,

or giving any reason whatever for the departure from landmarks apparently established after thoughtful and intelligent consideration. Thus, more than once, have salutary and useful measures of legislation been held void, and this provision of the constitution, intended to prevent certain well known practices in legislation, which had grown into a serious evil, became itself a greater curse, we fear, than had been the vices which it was intended to cure. It is time that its purpose and meaning should, if possible, be settled upon principles capable of somewhat general application. In the opinion of Mr. Justice *Gookins,* in *Beebe* v. *The State,* 6 Ind. 501, and in *Brandon* v. *The State,* 16 Ind. 197, *The Bank, &c.* v. *New Albany,* 11 Ind. 139, and *Robinson* v. *Skipworth, supra,* this has been, to some extent, done. Indeed, if the mischiefs of our previous legislation, which were intended to be remedied by the constitutional provision shall always be borne in mind, and that to prevent those mischiefs was its sole purpose, and the only use to which it can be legitimately applied by the courts, it seems to us that we shall have adopted an easy test of almost every question that can be made upon it, relieve the legislature from that embarrassment which, in a great degree, tends to paralyze its power for good, and vindicate fully, from serious and growing doubt, the wisdom of the restriction.

To say that a matter may not constitutionally find a place in an act, because it more logically belongs to a subject which is different from that which constitutes the principal burden of the act, or that it might itself properly constitute the subject of a separate act, is but to insist that but one *subject,* or matter, may be embodied in a single act. But the constitution does not so require. It authorizes one subject, and any number of matters, provided they have any natural or logical connection with each other in legislation. The words "subject" and "matter," are often used as synonymous. Indeed, in the sense in which they are employed in the constitution, they are as nearly so as it is possible for two English words to be, and both are used simply

to avoid repetition. The only difference between them is created by the offices which they are respectively made to perform in the clause in question. "Every act shall embrace but one *subject*, and *matters* properly connected therewith, which *subject* shall be expressed in the title." Now it is quite evident that the word "subject" is here used to indicate the chief thing about which legislation is had, and "matters," the things which are secondary, subordinate or incidental. The mischiefs intended to be prevented by the section were two. *First*, the passage of any act under a false and delusive title, which did not indicate the subject-matter contained in the act; a trick by which members of the legislature had been deceived into the support of measures in ignorance of their true character. *Second*, the combining together in one act of two or more subjects, having no relation to each other; a method by which members, in order to procure such legislation as they wished, were often constrained to support and pass other measures obnoxious to them, and possessing no intrinsic merit.

Is the insertion in an act to regulate the liquor traffic, of a section conferring upon particular courts jurisdiction of cases prosecuted for its violation, within any of the mischiefs intended to be prevented? This question can be answered only in the negative, and such an answer conclusively disposes of this constitutional objection.

We happen to have laws in force by the operation of which, when a new offense is created, some one of our courts can take jurisdiction of it. But the existence of these surely cannot render that unconstitutional, which would not be so if they did not exist. The legislature cannot, in such a matter, circumscribe its own power. In the absence of such statutes, the creation of a new offense would beget a necessity for conferring jurisdiction of it upon some court. Can there be a doubt then that the two things are properly connected, as the constitution requires? It really seems that to state the question ought to be sufficient.

2. The remaining objection is that so much of the 14th

section of the act as confers jurisdiction upon the circuit court is special legislation, and therefore in conflict with sec. 22, art. 4, of the constitution, which provides that special laws shall not be passed" for the punishment of crimes and misdemeanors, &c." and "regulating the practice in courts of justice."

This objection was considered, and deemed untenable, in *Thomasson v. The State,* and upon this point, that case has not been overruled. That opinion was based upon the authority of *Reed v. The State,* 12 Ind., 641. Upon one branch of the objection, *Reed v. The State* is an authority directly in point. Whether, for the same offense, it might be provided that a party might be brought to trial either in the circuit court by indictment, or in the common pleas by information, was, in that case, very fully and satisfactorily discussed by the court; and upon a careful review of the subject, we fully concur in the conclusion which was reached. The other branch of the objection, to-wit: that to confer jurisdiction upon both courts to try offenses under this act only, without giving the like jurisdiction as to all other misdemeanors, is a special law for the punishment of misdemeanors, has not, that we are advised, been directly considered by this court heretofore. It is proper, therefore, that we shall consider it more fully.

1. Let us test the proposition by the consequences which must necessarily flow from it, if we give it our assent. If it be special legislation to confer the jurisdiction, only as to this particular class of misdemeanors, without also embracing all other misdemeanors, it is the same thing to annex different penalties to different misdemeanors; for the penalty inflicted, as well as the mode, or *forum,* in which it shall be tried and adjudged, is comprehended by the language of the restriction, "*punishment* of misdemeanors." Surely the penalty imposed is the very essence of punishment, and cannot be excluded. So the first consequence would be to sweep from the statute book every vestige of existing law for the punishment of misdemeanors. The next would be, that all

classes of such offenses must be punished to the same extent, or not at all; and it is not easy to say which of these alternatives ought to be preferred. So, too, with felonies; and treason against the state, which aims at the destruction of government, and involves the wholesale slaughter of the people, is to be punished only to the same extent as the larceny of a penny!

But this mode of reasoning, though legitimate, is not conclusive; for a human constitution of government is necessarily imperfect, and may even drive us into absurdities— nevertheless, we have no authority to set it at naught. The remedy is not in the hands of the court.

What is a *special* act? It is such as at common law the courts would not notice, unless it were pleaded and proved, like any other fact. This is suggested in argument on behalf of the appellant, and we think that the proposition is correct. The distinction between general and special statutes was well known to the common law, though sometimes a question of great nicety, and it is in accordance with a well-established principle to assume, that the constitution in using the terms intended them to be understood in the sense which was at that time recognized by the courts. Now we apprehend that it will be impossible, anywhere, to find a decision by any respectable court, to the effect that an act is required to be pleaded which confers jurisdiction for the punishment of a particular misdemeanor, in all cases, though the court thus empowered could not take cognizance of other misdemeanors.

In *Heridia v. Ayres*, 12 Pick., 344, it was held that an act to regulate the pilotage of Boston harbor would be judicially noticed, because it was alike binding upon all persons who should violate it. In *Lovell* v. *Sheriff of London*, 15 East, 320, judicial notice was taken of an act concerning sheriffs, though the point had in earlier times been ruled the other way, upon the ground that sheriffs were a species of persons of a general class, to-wit, officers. But we need not extend this opinion by a further reference to the cases. Here all persons are bound by this law; and all, without distinc-

tion, who become amenable to its penalties, are liable to be tried in either court. As to the persons upon whom it operates, it could not be more general, and as to the jurisdiction, it is as general as it is relative to the penalty which it imposes. The act creates a class of offenses belonging to that grand division of offenses known as misdemeanors. This class is divided by the act itself into several species of offenses. So we have in the act the elements necessary for classification — as genus, species and individuals — according to Coke in *Holland's* case (4 Rep., 76,); and the jurisdiction is not merely of a *species*, which, according to that case, would make it special, but of the whole class or *genus*, which makes it general.

The judgment is affirmed, with costs

*J. W. Gordon*, for appellant.