[No. 7,253.—In Bank.]

# EARLE v. THE BOARD OF EDUCATION OF SAN FRANCISCO.

THE TRAYLOR ACT—CONSTITUTIONAL LAW—LOCAL ACT—DEFINITION.—The act approved April 2nd, 1880, entitled "An act to add a new section to the Political Code, to be known as section 1618, relating to salaries of school teachers in cities having 100,000 inhabitants or more," is *local* in its character, and therefore unconstitutional.

ID.—ID.—MANAGEMENT OF COMMON SCHOOLS—DEFINITION.—The fixing of the salaries of teachers is a part of the *management* of the schools, and comes within the meaning of that term as used in subd. 27, § 25, art. iv of the Constitution.

ID.—ID.—AMENDMENT—DEFINITION.—The act referred to is not an amendment of the Political Code.

APPEAL from a judgment for the plaintiff, in the Superior Court of the City and County of San Francisco. WILSON, J.

The proceeding in the Court below was mandamus, to compel the defendant to approve and allow the demand of the plaintiff for salary as teacher in the public schools.

*Rhodes & Barstow*, and *W. W. Morrow*, for Plaintiff.

*Garber, Thornton & Bishop*, for Defendant.

ROSS, J.:

This cause presents but one question: Is the act approved April 2nd, 1880, and commonly known as the Traylor Act, in violation of the Constitution of the State? The act is entitled, "An Act to add a new section to the Political Code, to be known as section 1618, relating to salaries of school teachers in cities having 100,000 inhabitants or more," and establishes the salaries to be paid to the teachers in the public schools "in all consolidated cities and counties containing more than 100,000 inhabitants."

Section 5 of art. ix, of the Constitution declares:

"The Legislature shall provide for a system of common schools, by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established."

By § 25 of art. iv, it is provided that "The Legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:

"First—    *    *    *    *

"Twenty-seventh—Providing for the management of common schools.    *    *    *    *

"Thirty-third—In all other cases where a general law can be made applicable."

We entertain no doubt that the fixing of the salaries of the teachers is as much a part of the "management" of the schools as is the employment of teachers, or the grading of classes. Ordinarily, an important part of the contract of employment of any one to serve in any capacity, is the fixing of the compensation for the services to be rendered, and there is nothing in the Constitution to indicate that the word "management" was used in the connection in which it is found in any other than its ordinary sense.

If, therefore, the act in question is special or local in its character, it is expressly prohibited by the 27th subdivision of § 25. That it is local in its nature and in its operation seems to us plain. It may not be an easy matter to define with precision

the distinction between a general law and one that is special or local. In a note to Sedgwick on the Construction of Statutory and Constitutional Law, (2nd ed. p. 529) it is said: "An act is local when the subject relates to a portion only of the people or their property, and may not, either in its subject, operation, or immediate necessary results, affect the people of the State or their property in general."

Burrill, in his Law Dictionary, (vol. 2, pages 153–4) defines the word "local" as follows: "Relating to place; expressive of place; belonging to or confined to a particular place; distinguished from general, personal, or transitory."

Looking at the Traylor Act, we see that it only purports to deal with salaries of teachers in consolidated cities and counties containing more than 100,000 inhabitants.

Whether we take judicial notice of the fact that there is in the State one such city and county or not, we do know that this act does not make provision for the salaries of the teachers in any city, county, or district in the State, outside of consolidated cities and counties of the population mentioned, and that it is entirely confined as to its subject and in its operation, if not to a specified locality, at least to specified localities. It would seem to follow, necessarily, that it is local as contradistinguished from general, and therefore within the constitutional inhibition already quoted.

This view renders it unnecessary to consider whether the act is also violative of the 33rd subdivision of § 25 of art. iv of the Constitution.

It is said that the question whether a general law can be made applicable is one for the discretion of the Legislature and not for the courts. It is true that it has been so decided, but under constitutions not containing a declaration that its provisions "are mandatory and prohibitory, unless by express words they are declared to be otherwise," as does the present Constitution of this State. It may be—although we do not so decide— that it would be the duty of the *Court*, under these provisions, to say whether a general law could be made applicable, in order to determine, in a given case, whether the act in question contravened that provision of the Constitution prohibiting the Legislature from passing any special or local law where a gen-

eral one can be made applicable. But, as observed already, it is unnecessary in this case to determine that question.

It is contended that the Traylor Act is but an amendment to the Political Code, that the Political Code contains a general law upon the subject to which the Traylor Act relates, and that by this sort of tacking the latter act is converted into a general law. We cannot appreciate the logic or force of the argument. The question is, had the Legislature the constitutional power to pass the act under consideration ? If it is a general law it had, and no resort to the Political Code is needed to uphold it. It is good of and by itself. If it is a special or local law, then it comes directly within the inhibition of the Constitution, and never had any validity, for the Legislature had no power to enact it. We do not understand how any law can be amended by a void act.

But the Traylor Act is in no sense an amendment to the Political Code. It is entitled, " An Act to add a *new section* to the Political Code, to be known as section one thousand six hundred and eighteen," etc., and its first section is: " A *new section* is hereby added to said Political Code, to be known as and numbered sixteen hundred and eighteen, and to read as follows," etc.

The new section is to follow immediately § 1617 of the Political Code, which, so far as necessary to be quoted, reads thus : " The powers of boards of trustees of school districts, and of boards of education in cities, are as follows :    *    *    *   7. To employ the teachers, janitors, and employés of schools ; to fix and order paid their compensation."

The new section, which is a subsequent act, declares that in consolidated cities and counties of a certain population the salaries of teachers shall be certain sums respectively. The subsequent act, if anything, is, to the extent it goes, a repeal by implication of the seventh subdivision of § 1617, but in no sense is it an amendment. If an amendment, what does it amend? The Political Code, or some particular section of it? If treated as an amendment at all, it is in direct conflict with § 24 of article ix, of the Constitution, which declares that *    *    *   " no law shall be revised or amended by reference to its title ; but in such case, the act revised or section amended shall be re-enacted, and published at length as revised or amended."    *    *    *

There is no pretense here that the law, whatever it is, supposed to have been amended by the Traylor Act, was re-enacted and published at length *as amended*, as is expressly required by the Constitution. If this law is to be upheld as an amendment, it seems to us it would be opening the door to the accomplishment by indirection of many of the evils it was manifestly intended by the framers of the Constitution directly to prevent, and thus wipe out some of its most salutary provisions. To maintain the Constitution as it is, is our first duty, and whenever it is encroached upon, we are bound to assert its supremacy.

Judgment reversed and cause remanded, with directions to sustain the demurrer to the petition.

MORRISON, C. J., concurred.

MCKINSTRY, J., concurring·

I concur in the judgment, and in the opinion of Mr. Justice Ross.

1. It may be admitted that a portion of a statute is repealed (by implication) when a subsequent statute is passed containing provisions so far in conflict with such portions of the first that the provisions of the new and the part of the older statute cannot coexist. In such case, however, the provisions of the latter, which operate a repeal of a portion of the older statute, are not, properly speaking, *amendments* of the older law. The last expression of the legislative will is an original law, to which are applicable the provisions of the Constitution, requiring that every law of certain classes shall be "general," and that it shall embrace but one subject, to be "expressed in its title." (Const. art. iv, §§ 24, 25.) The Traylor Act is therefore not an amendment of the Political Code.

2. But if, on the other hand, the Traylor Act can, for any purpose, be treated as an intended amendment of any portion of the Political Code, it is an amendment of the section thereof with which it conflicts, to wit, § 1617. Subdivision 7 of that section authorizes "the boards of trustees in school districts, and the boards of education in cities," to employ all *teachers*, and fix and order paid their compensation. The Traylor Act takes from the local boards the power of fixing the salaries of

teachers in a certain class of cities and counties. Section 24 of article iv of the Constitution declares that no law shall be amended by reference to its title, but in such case, the section amended shall be "re-enacted and published at length." The Traylor Act is not a re-enactment of § 1617 of the Political Code *as amended.*

3. I desire to add, even if the Traylor Act could be considered as an amendment of the Political Code, and the two, read together, could be treated as one law, such law would not be a "general law" within the meaning of those terms as employed in the Constitution. The Political Code purports to be, and in fact is, one statute, since it was passed through both houses of the Legislature and signed by the Governor as a single statute, and is entitled "An Act to establish a Political Code." It treats of a variety of subjects, not only furnishing a different rule for different localities with respect to many of them, but as to many of its provisions not applying to certain localities at all.

MYRICK, J., concurring:

I concur. The act in question does not purport to, and does not, in fact, deal with a rate of salaries applicable to the State at large. The Constitution, § 5, article ix, says that the Legislature shall provide for a system of common schools, by which a free school shall be kept up and supported in each district, etc. The term "district" is defined, Political Code, § 1576. The act in question, which was approved April 2nd, 1880, upon its face deals with a portion only, in fact with only one locality. It is, therefore, special, if not local in terms, and is within the prohibition of article iv, § 25, subdivision 27, of the Constitution, which is, that the Legislature shall not pass a special law providing for the management of common schools.

A special law is one referring to a selected *class*, as well as to a *particular object.* This act refers to a selected class, viz., teachers in cities of one hundred thousand inhabitants or more. I have no doubt that the Legislature may fix rates of salaries throughout the State, and in so doing, may grade; or it may confer the power upon the local boards; but to fix the salaries

in a class of towns, and leave the balance to be regulated by the local authorities, is, in my opinion, special legislation. (See Worcester's Dic. "Special"; Bouv. Law Dic. same; 12 N. Y. 595.)

Subdivision 20, § 25, article iv, prohibits the passage of special or local laws changing county seats. Could it be said not to be *special* legislation to pass a law changing county seats of all counties having more than one hundred thousand inhabitants, and prescribing another mode for counties having a less population?

By subdivision 33, the Legislature is prohibited from passing a special or local law " in all other cases where a general law can be made applicable." Cannot a general law fixing salaries, or prescribing a mode for fixing salaries, be made applicable to the entire State?

On the 7th of April, 1880, an act was passed relating to the public schools generally, and by that act, the Board of Education has power to fix the compensation of teachers. (§ 1617, subd. 7, amdts. Pol. Code, 1880, p. 36.) It is proper to suggest, that by the Constitution the educational department is made a State care, as distinguished from municipal, and that the regulation of schools in the City and County of San Francisco does not remain unchangeable under the " Consolidation Act." This view is in keeping with my concurring opinion in *Desmond* v. *Dunn*, 55 Cal. 242. It is not in conflict with *People ex. rel. Beckwith* v. *The Board of Education etc.*, opinion filed June 22nd, 1880. The Consolidation Act may remain for *municipal* purposes—that is, city and county government—yet the educational department, as a State matter, be subject under the Constitution to general laws passed for that purpose.

SHARPSTEIN, J., dissenting:

I dissent. The principal, if not the only ground relied upon by those who deny the constitutionality of the " Traylor Act," is that it contravenes subdivision 27 of § 25 of article iv of the Constitution. That clause reads as follows: " The Legislature shall not pass local or special laws providing for the management of common schools." If this act does not provide " for

the management of common schools," or is not a "local or special" law, it is not obnoxious to the objection that it violates that clause of the Constitution.

The first question which I shall consider is, whether or not the "Traylor Act" is a law "providing for the management of common schools." If it is, I think that it should be held unconstitutional, on the ground that the subject of the act is not expressed in its title. (Const. § 24, art. iv.) The act is entitled, "An Act to add a new section to the Political Code, to be known as section one thousand six hundred and eighteen, relating to salaries of school teachers in cities having one hundred thousand inhabitants or more." If this title was selected to express the subject of an act "providing for the management of common schools," it seems to me that the Legislature could not have gone much wider of the mark. I do not think that any one would expect to find, under that title, anything providing for the *management* of common schools, nor do I think that this act contains any such provision. It relates to teachers' salaries, and the salaries of teachers have about as much to do with the management of common schools as the salaries of judges have to do with the administration of justice. If this act had been entitled "An Act to add a new section to the Political Code, to be known as section one thousand six hundred and eighteen, *providing for the management of common schools* in cities having one hundred thousand inhabitants or more," the title would have expressed what is now claimed to be the subject of the act. But I cannot help thinking that the inappropriateness of such a title, if it had been placed at the head of this act, would be patent to every one who should read both the title and the act. The Legislature may, if it sees fit, increase the salaries of the Judges of the Superior Courts of this State. If such an act is ever passed, I do not think that it will be entitled "An Act to provide for the management of courts of justice," and yet it would be quite as much an act providing for their management as this is "for the management of common schools." It does not seem to me that an act which should authorize some school district to erect a school-house would be an act providing for the management of common schools. And yet the sums paid for the erection of school-houses enter quite as much into the management

of the schools as the salaries paid to teachers. It is just as necessary to have school-houses as it is to have teachers. People may be educated without either of them. But the management of a school is a matter entirely distinct from the building of school-houses or the payment of teachers; and I think that the constitutional prohibition against the passage of local or special laws providing for the management of common schools relates solely to the manner of conducting such schools, and that it simply prohibits the passage of any local or special law, prescribing the manner in which common schools shall be conducted. It would be strange if it were otherwise. No one doubts the impracticability of having the salaries of teachers generally fixed by the Legislature. And yet it is made its duty to provide a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established. (Const. § 5, art. v.) Now it is conceded that the Legislature might, by the passage of a general law, directly fix the salaries of teachers. It is denied, however, that the Legislature can fix them in any district unless it does so in all the districts; which, as we have observed, is impracticable. If this position be correct, it is in the power of any district in the State to defeat the provision that requires that a free school shall be kept up in each district, by refusing to pay salaries sufficient in amount to secure the services of teachers. If the Constitution had left it optional with the inhabitants of each school district to have a free school or not, this point would be without force. But, in the absence of that option, I do not believe that the constitutional requirements can be so easily defeated.

The next question is, whether the Traylor Act is a local or a special law within any well-settled definition of the terms *local* or *special* laws. I do not think that it is.

1. The doctrine is elementary that an amendment of a statute by a subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as regards any action had after the amendment is made. Under that rule the " Traylor Act " must be viewed in the same light now, so far as this case is concerned, as it would be if it had constituted a part of the original act at

the time of its passage.   The Political Code, as amended by the
"Traylor Act," provides a system by which a free school shall
be.kept up in and supported in each district of the State.   Among
other things, it fixes the compensation of teachers in consoli-
dated cities and counties of one hundred thousand or more in-
habitants, and confers the power to fix their compensation upon
the boards of education of cities of a less population, and upon
the trustees of schools in districts outside of cities and consoli-
dated cities and counties.   If I am correct, in regarding the sec-
tion added by the Traylor Act as if it had been in the original
act at the time of its passage, it is impossible for me to perceive
why it should be more obnoxious to that objection than one
which confers the power to fix the compensation of teachers
upon boards of education in cities containing a population of less
than one hundred thousand, or the one which confers the same
power upon boards of trustees in school districts.   Each of these
clauses is different from either of the others in respect of the
body by which the compensation is fixed, and to be fixed.   If
one can be detached from the context and be pronounced *special*
or *local*, may not either of the other two· be subjected to the
same process?   The chapter of the Code which relates to the
establishment and support of common schools, is undoubtedly a
general law within any known definition of that phrase.

2. As an independent act, it seems to me that the "Traylor
Act" should be held to be a general law.   Neither the term
"special law" or "local law" has been defined with the exact-
itude that most law phrases have been.   Perhaps neither is sus-
ceptible of a very nice definition.   Cases are not wanting, how-
ever, in which particular enactments were held to be special or
local, and others to be general.   In *Holland's Case*, it is said:
"The rule of law is, that of general statutes the judges ought
to take notice, although not pleaded—otherwise of special or
particular statutes."   (4 Co. 76 a.)   In Indiana, it has been
held that a special law "is such as at common law the courts
would not notice, unless it were specially pleaded and proved
like any other fact."   (*High* v. *The State*, 24 Ind. 28; *Toledo
etc. Ry. Co.* v. *Nordyke*, 27 id. 95.)   In the same State, it was
held that a law which related to a particular class of cases, and
to them alone, was not a special law.   (*Hymes* v. *Aydelott*, 26

Ind. 431.)    One clause of a section of a statute of New York provided, that thereafter all actions against the mayor, aldermen, and commonalty of the city of New York should be brought in the Supreme Court, and that that court should have exclusive cognizance of such actions.    The Superior Court held that it was essentially public in its object and purposes, and not private or local.    (*Bretz* v. *Mayor etc. of New York*, 6 Rob. [N. Y.] 325.)    Of an act entitled "An Act in relation to the payment and compensation of certain officers in the city and county of New York," the Superior Court said: "We do not feel warranted in holding that the act in question is local, within the meaning of the Constitution."    (*Connor* v. *The City of New York*, 2 Sand. 355.)    And when the same case was before the Court of Appeals, (1 Seld. 285) Foote, J., said : "Regulating the amount and manner of paying the officers, or a given number of the officers of a county of this State, for their official services, when such services are rendered in and form part of the administration and execution of the laws of this State, and affect the citizens thereof who come within their range, can neither be private nor local in the view contemplated by the Constitution."    An act relating to roads in Baltimore County was held not to be a special law in any sense of the term. (*Webster* v. *County Commissioners etc.* 29 Md. 516.)    The Constitution of Pennsylvania provides that " the General Assembly shall not pass any local or special law    *    *    *    regulating the affairs of counties, cities, townships, wards, boroughs, or school districts,    *    *    *    *nor shall they indirectly enact such special or local laws by the partial repeal of a general law.*"    It was held, however, that a law applicable to cities containing a population exceeding 300,000, although there was only one city in the State having that number of inhabitants, was constitutional.    (*Wheeler* v. *Philadelphia*, 77 Pa. St. 338.)    In that case, the Court said : " The true question is, not whether classification is authorized by the terms of the Constitution, but whether it is expressly prohibited."    The Court further said: " That a statute which relates to persons or things as a class, is a general law."    A case involving a similar question, afterward came before the same Court, and it said : "We adhere to that decision (*Wheeler* v. *Philadelphia*, *supra*) and indeed, cannot see

how the question of power could have been decided differently. To say that no general law can be passed to regulate a certain subject, because some of the classes contained in the regulation do not yet exist, or exist only in a limited number, is to hold that no law can be passed to provide for future wants or necessities." (*Kilgore* v. *Magee*, 85 Pa. St. 401.)

It was urged on the argument in behalf of respondent, that the power to fix the salaries of teachers is given to the Board of Education by the Consolidation Act, which constitutes the charter of the municipal corporation of the City and County of San Francisco. I think that the counsel mistakes the fact. The act under which I understand that the respondent claims to derive its power to fix the salaries of teachers is entitled " An act to provide for the support of the Common Schools of the City and County of San Francisco, and to define the powers and duties of the Board of Education thereof," approved April 1st, 1872. If I am correct as to the fact, the maxim, "*Leges posteriores priores contrarias abrogant,*" would seem to apply in this case.

The question whether the provisions of this act, if opposed to any of the provisions of the Consolidation Act, should be held to repeal such repugnant provisions of the latter act, does not arise in this case. That the Consolidation Act cannot be repealed or amended by any general act of incorporation until a majority of the electors of the City and County of San Francisco determine to become organized under such general act, seems to me to be sufficiently clear; and that is as far as the *dictum* in *Desmond* v. *Dunn,* as I understand it, goes. The case at bar presents this state of facts:

The Legislature, in 1872, conferred the power upon the respondent to fix the salaries of teachers, and in 1880 the Legislature took that power away from the respondent, and resumed the right which it always had of directly exercising that power itself. It is urged, however, that the Legislature could not accomplish this by amending the Political Code in the manner in which it is attempted to be done in the Traylor Act. This raises a very serious question, as a very large proportion of all the enactments of the late Legislature are of the same character. I now have before me a volume entitled " Acts Amenda-

tory of the Codes," and it seems to me that they are all obnoxious to the same objection as the Traylor Act.    In a clear case this would not be entitled to any weight, but in a case of doubtful construction, it should have great weight.

I am, therefore, of the opinion that the judgment of the Court below should be affirmed.

THORNTON, J., dissenting:

I dissent, and concur in the conclusion reached by SHARPSTEIN, J.