The State *v.* Gerhardt.

THE STATE *v.* GERHARDT.

[No. 17,742. Filed June 19, 1896.]

CONSTITUTIONAL LAW.—*When a Party May Question the Validity of a Law.*—A party will not be heard by a court to question the validity of a law, or any part thereof, unless he shows that some right of his is impaired or prejudiced thereby. *p. 450.*

SAME.—*Unjust or Oppressive Statute.*—A court cannot declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of a citizen, unless it can be shown that such injustice is prohibited, or such rights guaranteed, or protected by the constitution. *p. 450.*

SAME.—*Statute.—Presumption in Favor of Validity.*—All presumptions must be indulged in favor of a statute, and it is only when made to appear clearly and plainly that a statute violates some provision of the constitution, that it should be declared void. *p. 451.*

SAME.—*Invalidity of One Section May Not Invalidate Entire Act.*—When the different sections of an act are independent of each other, the invalidity of some of the sections would not necessarily invalidate the entire act. *p. 452.*

SAME.—*Statute.—Amendment by Implication.*—Where an act does not, either by its title or its terms, expressly profess to be amenda-

| | |
|---|---|
| 145 | 439 |
| 145 | 495 |
| 145 | 531 |
| 145 | 532 |
| 145 | 537 |
| 145 | 696 |
| 145 | 697 |
| 145 | 699 |
| 146 | 37 |
| 146 | 64 |
| 146 | 355 |
| 146 | 612 |
| 147 | 634 |
| 145 | 439 |
| 148 | 32 |
| 149 | 197 |
| 149 | 207 |
| 151 | 266 |
| 145 | 439 |
| 153 | 616 |
| 145 | 439 |
| 154 | 124 |
| 155 | 105 |
| f155 | 129 |
| 156 | 17 |
| f156 | 19 |
| 156 | 381 |
| 156 | 535 |
| 145 | 439 |
| 157 | 326 |
| 157 | 525 |
| 145 | 439 |
| 158 | 129 |
| 158 | 590 |
| 158 | 594 |
| 145 | 439 |
| 159 | 231 |
| 159 | 498 |
| 159 | 501 |
| 159 | 502 |
| 159 | 503 |
| 145 | 439 |
| o160 | 54 |
| 160 | 386 |

The State *v.* Gerhardt.

tory of any statute, but has a bearing on a prior statute, which may result in amending such prior statute by implication, it is not in violation of Art. 4, section 21, of the constitution prohibiting amendments to statutes by mere reference to title. *p. 452.*

SAME.—*Continued Practice of Legislature.—Interpretation of Constitution.*—The continued and repeated practice of the legislature, unquestioned for a period of forty years, becomes a potent factor in the interpretation of the constitution; so much so that the court will be controlled by it when in doubt. *p. 457.*

SAME.—*Constitution.—Subject-matter and Title of Act.*—In Art. 4, section 19, of the constitution, providing that "every act shall embrace but one subject, and matters properly connected therewith," the word "subject" indicates the thing about which the legislation is had, and the word "matters" the things which are secondary, subordinate, or incidental. *p. 458.*

SAME.—*Statutes Relating to Same Subject-matter Construed Together.*—When a number of statutes, no matter when passed, relate to the same thing, or a general subject-matter, they are to be construed together and are *in pari materia.* *p. 460.*

SAME.—*Construction of Statute.*—Whenever a statute can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts. *p. 461.*

POLICE POWER.—*When a Legislative, and When a Judicial Question.*—It is the province of the legislature to decide when the exigency exists for the exercise of the police power of the State, but as to what are the subjects which come within it, is a judicial question. *p. 451.*

INTOXICATING LIQUORS.—*Nicholson Law.—Subject-matter and Title of Act.—Constitutional Law.*—The subject of the Act of March 12, 1895, known as the "Nicholson Law," as expressed in its title is "The better regulation and restriction of the sale of intoxicating liquors;" and the matters connected therewith, are the provisions providing for its enforcement and penalties for its violation, for a remonstrance against the granting of license, and conferring jurisdiction upon the courts in event of its violation; all of which are germane to the subject and not in controvention of Art. 4, section 19, of the constitution. *p. 459.*

SAME.—*Acts of 1895, and of 1875, Construed Together.—Other Business in Room Where Liquors are Sold.*—The proviso in section 2, Act of March 11, 1895, giving the board of county commissioners power to grant or refuse permission to carry on other business in the same room where intoxicating liquors are sold, when construed with sections 3 and 4, Act of March 17, 1875, which makes the granting of such permission depend on the personal fitness of such

The State *v.* Gerhardt.

applicant, is not open to the objection that it confers absolute and arbitrary power upon the commissioners; and does not, therefore, invalidate the law. *p. 463.*

SAME.—*Closing of Saloon at Time When Sale is Forbidden.*—It is within the power of the legislature to require a saloonkeeper to securely close his saloon and permit no one to enter during the time when the sale of liquors is forbidden. *p. 466.*

SAME.—*Persons in Saloon at Prohibited Hours.*—*Prima Facie Evidence.*—*Statute Construed.*—Section 3, Act of March 11, 1895, making the fact that persons are permitted to go in and out of a saloon on days or hours when the sale of liquor is prohibited, *prima facie* evidence of guilt upon trial of a cause charging the saloonkeeper with violation of the law in the sale of liquor at such prohibited times, is valid. *p. 466.*

SAME.—*License Not a Contract.*—A license to engage in the liquor traffic is not a contract or grant, but a mere permit, and the applicant who receives it does so with the knowledge that it is at all times within the control of the legislature. *p. 467.*

SAME.—*Violation of Statute May be Without Violating Every Provision.*—*Constitutional Law.*—Under the general provision "For a violation of this or either of the foregoing sections of this act, the defendant shall be fined," etc., it is not necessary that all the provisions of a section be violated in order to make one liable to a fine. *p. 467.*

SAME.—*License.*—*Remonstrance.*—*County Commissioners.*—*Constitutional Law.*—Section 9, Act of March 11, 1895, providing that, if three days before any regular session of the board of commissioners of any county, a remonstrance in writing signed by a majority of the legal voters of any township, or ward in any city situated in the county, shall be filed against the granting of a license to any applicant for the sale of intoxicating liquors, it shall be unlawful to grant such license for a period of two years, etc., is not unconstitutional as delegating legislative power to the people to suspend the general license law. *p. 468.*

SAME. — *License.* — *Remonstrance.* — *When Remonstrator May Not Withdraw His Name.*—Under section 9, Act of March 11, 1895, providing that, if three days before the regular session of the board of county commissioners, a majority of the legal voters shall sign and file a remonstrance, the license shall not be granted, a withdrawal of one's name from a remonstrance can not be made after the beginning of the third day before such meeting. *p. 473.*

SAME.—*License.*—*Remonstrance.*—*General Remonstrance Not Sufficient.*—*Statute Construed.*—The remonstrance against the issuing of license to sell intoxicating liquors, provided in section 9, Act of March 11, 1895, must apply to a particular applicant and against whom it is addressed ; a general remonstrance is not sufficient. *p. 474.*

---

The State *v.* Gerhardt.

---

From the Vigo Circuit Court.  *Reversed.*

*W. A. Ketcham,* Attorney-General, *E. F. Ritter, S. M. Huston, F. E. Matson,* and *Duncan, Smith & Hornbrook,* for State.

*S. R. Hamill, Lamb & Beasley, Elliott & Elliott, Zollars & Worden, Stewart Bros.,* and *Hammond, Baker & Daniels,* for appellee.

JORDAN, J.—This appeal, together with a number of other cases now pending in this court, involves the validity of an act of the general assembly, approved March 11, 1895, entitled an "Act to better regulate and restrict the sale of intoxicating, spirituous, vinous, and malt liquors," etc.  Acts of 1895, p. 248.  Some of these appeals also seek to have a judicial interpretation placed upon this statute as to the right of remonstrators to withdraw their names from a remonstrance, interposed by a majority of the voters in a township or ward against granting a license to an applicant.  These cases, for hearing and determination, have been consolidated in this appeal.  In order to more fully effectuate the purpose for which they were consolidated, the cardinal questions raised in all of them will be considered and decided in this opinion, and the decision herein, on the several propositions, will be controlling on the same questions presented by the other cases.  It is better, perhaps, that we state the propositions that are presented by these series of cases and the sections of the statute under which they arise.

In the cause herein entitled, the appellee, Gerhardt, who had been duly licensed to sell intoxicating liquors, under the general license law of 1875, is charged by affidavit and information with having violated section two of the statute of 1895, *supra,* "by failing to provide for the sale of said liquors in a room, separate and apart from other business, but that he

did unlawfully conduct the sale of groceries in the same room wherein the said liquors were retailed." In the appeal of the *State* v. *Myers*, No. 17,743, the appellee is charged in three counts with having violated sections two and four of the law in question. First. With failure to provide a room for the sale of intoxicating liquors separate from other business. Second. By keeping in the room where the liquors were sold certain devices for amusement, to-wit: six billiard tables, upon which certain named persons were permitted to play billiards for amusement. Third. That he maintained certain blinds and screens in his saloon so as to prevent the entire view of the interior from the street, during the hours in which the sale of intoxicating liquors is prohibited by law. In *Zapf* v. *State*, *post*, 696, the appellant is charged with violating section three of this act, by permitting certain mentioned persons, not members of his family, to enter and come into his saloon on a day upon which the sale of liquors was prohibited, to-wit: July 4, 1895. In *Greille* v. *Wright*, *post*, 699, in addition to other minor matters, the question is presented as to the right of certain remonstrators, under section nine of the act of 1895, to withdraw their names after the filing of the remonstrance and within the beginning of the three days' period allowed for filing the same. Others of these consolidated cases present also these questions: First. As to whether persons who have joined in a remonstrance, and after the same has been filed with the auditor, may be permitted by the board of commissioners to withdraw their names and thereby reduce the remonstrators below the number required by the statute. Second. As to whether the remonstrance is directed against a particular applicant, or generally against granting a license to any one. This statute, which is commonly denominated

the "Nicholson Bill," differs in several essential features from any other law upon the subject of the sale of intoxicating liquors, heretofore passed by the legislature of this State.   In consideration of the public interest, in a proper decision of the questions herein involved, as well as the interest of those who have appeared at the bar of this court, claiming to be aggrieved by reason of the enforcement against them of the provisions of an alleged unconstitutional law, we have given these questions such thought and review as the magnitude and importance thereof demand, and we now proceed to pass in judgment upon the same, stating the reasons which have led us to the conclusions reached.

We may first properly set out the title of the law in controversy, and also some of its principal provisions, or sections, in order that it may be more fully disclosed as to whether the act is open to the contentions or objections of the learned counsel for appellee, by which they seek to expose its alleged invalidity.   The act is entitled as follows:

"An act to better regulate and restrict the sale of intoxicating, spirituous, vinous and malt liquors, providing penalties for violation of the same, providing for the enforcement thereof, and providing for remonstrance against the granting of license for the sale of the same and conferring jurisdiction upon police courts and justices of the peace, in cases of violation of the provisions of this act and other laws of the State on the subject of selling intoxicating liquors."

Section one, in substance and in the main, provides that all persons applying for a license to sell intoxicating liquors, under existing laws of this State, shall specifically describe and locate in the application the room wherein he desires to sell such liquors.   That no license shall be granted to any other than a male

person over the age of twenty-one years, who shall be of good moral character, and that he shall not be deemed to possess such character if within two years he shall have been adjudged guilty the second time of violating any of the provisions of the act. Sections two and three are as follows:

"Sec. 2. All persons holding license issued under the law of the State of Indiana, authorizing the sale of spirituous, vinous, malt or other intoxicating liquors in less quantities than a quart at a time, shall provide for the sale of such liquors in a room separate from any other business of any kind, and no devices for amusement or music of any kind or character, or partitions of any kind, shall be permitted in such room, provided, that nothing in the provisions of this act shall be construed to forbid the sale of cigars and tobacco in such place of business: *And provided further,* That if such applicant for license desires to carry on any other or different business, he shall state the same in his application for license, and the same may be granted or refused by the board of commissioners hearing such application and such permission shall be stated in the license if granted.

"Sec. 3. Any room where spirituous, vinous, malt or other intoxicating liquors are sold by virtue of a license under the laws of the State of Indiana, shall be so arranged that the same may be securely closed and locked, and admission thereto prevented and the same shall be securely locked and all persons excluded therefrom on all days and hours upon which the sale of such liquors is prohibited by law. It is hereby made unlawful for the proprietor of such a place and the business herein contemplated of selling intoxicating liquors, to permit any person or persons other than himself and family to go into such room and place where intoxicating liquors are so sold upon

such days and hours when the sale of such liquors is prohibited by law. The fact that any person or persons are permitted to be in, or go in or out of such room upon any day or hour when the sales of such liquors are prohibited by law, shall be *prima facie* evidence of guilt upon trial of a cause charging the proprietor of such room with violating the law in the sale of such liquors upon such days or hours."

Section four, in substance, provides that any room where intoxicating liquors are sold by virtue of a license issued under the law of this State, shall be situated upon the ground floor of the building, and that said room front the street and be so arranged, either with window or glass door, that the interior thereof may be in view from said street, and that no screens, blinds, or obstructions to the view shall be placed or erected so as to prevent the entire view of said room from the street or highway, during the hours and days when the sales of liquors are prohibited by law. This section further provides that "upon conviction for the violation of this, or either of the foregoing sections of this act, the defendant shall be fined," etc., and that for a second conviction, the court may, and upon a third conviction shall, annul the license and all rights thereunder. Section five makes it a penal offense to suffer minors to loiter in a saloon, and section six forbids the sale to minors, for their own use or for that of any other person. Section seven prescribes the duties of peace officers, and section eight provides to whom permits may be issued, and for the refunding of the license fee in the event of the death or insanity of a person holding a license. Section nine provides for a remonstrance, and is as follows:

"If, three days before any regular session of the board of commissioners of any county, a remonstrance in writing, signed by a majority of the legal voters of

The State *v.* Gerhardt.

any township or ward in any city situated in said county, shall be filed with the auditor of the county, against the granting of a license to any applicant for the sale of spirituous, vinous, malt or other intoxicating liquors, under the law of the State of Indiana, with the privilege of allowing the same to be drunk on the premises where sold, within the limits of said township, or city ward, it shall be unlawful thereafter for such board of commissioners to grant such license to such applicant therefor during the period of two years from the date of the filing of such remonstrance. If any such license should be granted by said board during said period, the same shall be null and void, and the holder thereof shall be liable for any sales of liquors made by him, the same as if such sales were made without license. The number to constitute a majority of voters herein referred to shall be determined by the aggregate vote cast in said township or city ward for candidates for the highest office at the last election preceding the filing of such remonstrance."

It is obvious, from the language employed in the title of the statute, that the purpose or intent of the legislature in enacting the law was "*to better regulate and restrict* the sale of intoxicating liquors." We must presume that the members of the last general assembly had discovered that existing laws were, for some reason, deficient, and that the traffic in intoxicating liquors was not regulated and restricted in such a manner as to promote the public morals and the safety and peace of society, and that a betterment of our laws upon this subject was demanded. The unrestricted traffic in intoxicating liquors has been found, by sad experience, to be fraught with great evil, and to result in the most demoralizing influence upon private morals, and the peace and safety of the

public; hence the solicitude of the people, in general, upon this subject, and a demand of late upon their part that this restrictive legislation shall be extended beyond its former limits. The policy of the legislature for years past in this State has been, not to encourage its citizens to engage in the retail traffic of liquors as a beverage; therefore, from time to time, this body under the exercise of the police power of the State, has interposed by legislation and imposed upon those engaged in the business, conditions, burdens and restrictions, and heavy penalties for violation of the restrictive provisions of such statutes. These laws being designed to promote the public good, it has been the endeavor of this court to uphold, and so construe them, as to secure the object in view; and it is only when some provision of the organic law has been violated in the manner of their enactment, or under it some fundamental right of a citizen has been clearly abridged, that they have met, in whole or in part, with judicial condemnation. The constitutional objections urged against the statute in controversy by counsel for the appellee are in the main as follows:

1st. The entire act is said to be void for the reason that its material provisions are so interdependent and blended with each other that the portions that are valid cannot be separated from those which are invalid, hence all must fall together.

2d. That it is in substance and effect an amendment of the license law of 1875, and the enactment thereof did not conform to section 21, Art. 4, of the constitution, which provides that: "No act shall ever be revised or amended by mere reference to its title; but the act revised or section amended shall be set forth and published at full length."

3d. That the title is insufficient, for the reason that it is in contravention of Art. 19, section 4, of our con-

The State *v.* Gerhardt.

stitution, viz: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title."

4th. Section two is invalid for the following reasons:

a. It delegates legislative powers to the county commissioners.

b. It confers upon such commissioners unlimited and arbitrary power to determine what persons may, or may not, conduct other business in connection with that of retailing liquors.

c. No rule or standard is prescribed for the government of the commissioners, so that there is no law under which they can act.

d. The business of the citizen can only be regulated by law, and it cannot be left to the arbitrary decision of public officers.

e. It violates section 23 of Art. 1, of the constitution, which forbids the general assembly to grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. It is insisted that the right to conduct a business, even if it be one requiring a license, is a privilege, and the right to be exempted from prosecution is an immunity.

Section two is also said to conflict with the Fourteenth Amendment of the Federal Constitution, as it denies the equal protection of the laws.

6th. The contentions that section three is invalid are:

It violates the right of property guaranteed to every citizen. It prescribes what shall constitute *prima facie* evidence of guilt.

7th. Section nine, it is urged, is invalid for these reasons:

VOL. 145—29

a.   It is not embraced within the title.

b.   It provides for local prohibition.

c.   It is not properly connected with the act as limited by the title.

d.   It is unconstitutional because it empowers a majority of the voters of a township or ward to suspend the operation of general laws.

Sections seven and eight are also said to be open to several specified constitutional objections, but it is not disclosed by the record that any of the complainants is in an attitude to assail the constitutionality of these sections. It is firmly settled that a party will not be heard by a court to question the validity of a law, or any part thereof, unless he shows that some right of his is impaired or prejudiced thereby. *Currier v. Elliott,* 141 Ind. 394. This fact not appearing, the contentions relative to these sections are dismissed without consideration.

The insistence of counsel as to the invalidity of the statute in question is denied and combated by the learned and eminent attorneys appearing in behalf of the State, and they insist that the enactment of the law as to all of its parts was a valid exercise of the police power by the legislature. As preliminary to a decision of the questions herein involved, it may be proper to call attention to the rule by which this court is controlled in the determination of the constitutionality of any particular law, and also to the extent to which the police power of the State may be invoked to sustain a legislative act. As to the expediency or wisdom of a statute, we have no concern, that is a question lodged wholly within the discretion of the legislature. A court cannot declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the

citizen, unless it can be shown that such injustice is prohibited, or such rights guaranteed or protected by the constitution. *Burrows* v. *Delta Transportation Co.,* 29 L. R. A. 468; *Praigg* v. *Western, etc., Co.,* 143 Ind. 358. It is said, and properly so, that the courts are not the guardians of the rights of the people, except as those rights are secured by constitutional provisions which come within judicial cognizance. Cooley Const. Lim. (6th ed.), p. 201. An act of the legislature comes to us as the will of the sovereign power. In the first instance the members of that body must be deemed to be the judges of their own constitutional authority. The State's executive and each member of its general assembly take an oath to support the constitution, both Federal and State, and as these can only be supported by obeying and enforcing their provisions, we must presume that these duties were discharged by our lawmakers in the passage of the particular act in question, and by the Governor when he officially gave to it his sanction and approval. For these reasons, and others, all presumptions as to its validity must be indulged in its favor, and it is only when made to appear clearly, palpably, and plainly, and in such a manner as to leave no reasonable doubt or hesitation in our minds, that a statute violates some provision of the constitution that we can consistently declare it void. This rule has been repeatedly affirmed by this court, and by other courts generally throughtout the Nation. *Robinson, Treas.,* v. *Schenck,* 102 Ind. 307, *State, ex rel.,* v. *Roby et al.,* 142 Ind. 168.

The police power of a State is recognized by the courts to be one of wide sweep. It is exercised by the State in order to promote the health, safety, comfort, morals, and welfare of the public. The right to exercise this power is said to be inherent in the people in every free government. It is not a grant, derived

from or under any written constitution. It is not, however, without limitation, and it cannot be invoked so as to invade the fundamental rights of a citizen. As a general proposition, it may be asserted that it is the province of the legislature to decide when the exigency exists for the exercise of this power, but as to what are the subjects which come within it, is evidently a judicial question. *Ritchie* v. *People*, 155 Ill. 98; 29 L. R. A. 79; 46 Am. St. Rep. 315.

Keeping in mind these salutary rules, we will proceed to consider in detail the objections urged against the statute. We recognize the general rule of the law, that where the constitutional provisions of an act are so blended or interlocked with those which are unconstitutional that they cannot be separated, then all must fall. It is manifest, however, upon an inspection and consideration of the act in controversy, that it does not come within the application of this rule, for the reason that the sections are in the main independent of each other, and if it could be held that some were bad, such a result would not necessarily invalidate the entire act.

It is next insisted that the statute is an amendment to that of 1875, which provides for the granting of a license to retail intoxicating liquors, and is void for the reason of the failure of the legislature to comply with the requirements of Art. 4, section 21, of the Constitution. Neither by its title nor by its terms does it expressly profess to be amendatory of any statute. Its title indicates it to be a distinct and original enactment; and while it is true that it refers to existing laws, relating to the granting of a license, and has a bearing upon the same, and may result in modifying or amending certain parts thereof by implication, still, this, in reason, cannot be said to bring it within

the mischief which the provision of the constitution referred to was designed to prohibit.

In the appeal of *People* v. *Mahaney*, 13 Mich. 481, a statute was assailed under a provision of the constitution of the State of Michigan substantially like section 21, *supra*, for like reasons urged by appellee. It was there pertinently said, and the rule affirmed, by Cooley, J., on page 496 of the opinion, as follows:

"If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title."

The same rule is asserted by this court in *Branham* v. *Lange, Aud., etc.*, 16 Ind. 497, and reaffirmed in *Barton et ux.* v. *McWhinney*, 85 Ind. 481. Cooley on Const. Lim. (6th ed.), p. 180. With equal force might the authority of the legislature be denied to enact a general law, limiting the time of taking appeals to this court to six months, thereby changing or amending by implication the law

as it now exists, relative to the time for taking such appeals. Such a statute might, with the same consistency be attacked for the same reason, namely, that the existing statute, which it amended or modified by implication, should have been published at length as amended. Surely such a contention could not be sustained. It is true, that some portions of the act in question operate upon persons who are exercising rights under the act of 1875, and to that extent only it depends upon the latter law; but this fact manifestly would not bring it within the objections urged by counsel for appellee. Again, upon another view of the question, it may be said, that the legislature, by a long continued and unquestioned practice in the passage of laws which in effect modified or amended other acts upon the same subject, without setting out or specifically referring to those so changed or amended, has given a practical construction upon the question involved. We may properly refer to some of these enactments. Beginning with the general assembly of 1852, immediately following the adoption of our present constitution, an act entitled "An act for the incorporation of railroad companies," was passed. R. S. 1852, Vol. 1, p. 409.

Under this title provision was made; not simply for the incorporation, but for the government, powers, duties and liabilities of such companies.

At the same session, viz: by an act approved June 15, 1852, there was enacted, under the title of "General provisions in regard to railroad companies," an act upon the same general subject as that of the original act. (R. S. 1852, Vol. 1, p. 421), section 5221, Burns' R. S. 1894.

And also, "An act to authorize railroad companies to increase the amount of their capital stock and to increase the number of their directors," approved

June 18, 1852. (R. S. 1852, p. 423), section 5139, Burns' R. S. 1894.

And also, "An act supplemental to an act to provide for the incorporation of railroad companies," approved June 18, 1852, R. S. 1852, p. 425.

At the next session an act was passed authorizing the filing of copies of articles of association. (Acts of 1853, p. 107), Burns' R. S. 1894, section 5137.

In 1893 there was passed "An act authorizing railroad companies to issue preferred stock in exchange for common stock," approved February 22, 1893. (Acts of 1893, p. 133), Burns' R. S. 1894, section 5140.

In 1873 an act was passed providing for the crossing of railroads, etc. (Acts of 1873, p. 186.)

And also authorizing such companies to make contracts for the use of their tracks. (Acts of 1883, p. 55), Burns' R. S. 1894, section 5156.

In 1883, an act was passed on the subject of railroad crossings at grade. (Acts of 1883, p. 55), Burns' R. S. 1894, section 5156.

In 1893 (Acts of 1893, p. 335), section 5166, Burns' R. S. 1894, an act requiring the recording of deeds, etc., was passed.

At the special session of 1865 (Acts of 1865, p. 118), section 5171, Burns' R. S. 1894, "An act to enable railroads to alter their lines in certain cases," was passed.

In 1891 (Acts of 1891, p. 364, section 5174, Burns' R. S. 1894), there was passed an act for the employment of flagmen.

And in 1875 (Acts of 1875, p. 125, section 5182, Burns' R. S. 1894), an act for the protection of passengers.

In 1889 (Acts of 1889, p. 279, section 5186, Burns' R. S. 1894), an act requiring them to give notice as to whether their trains were on time.

In 1891 (Acts of 1891, p. 70, section 5188, Burns' R.

S. 1894), an act compelling them to establish waiting rooms, etc.

In 1861 (Acts of 1861, p. 149, section 5201, Burns' R. S. 1894), an act regulating the sale of railroads, and an act on the same subject in 1865. (Acts of 1865, p. 66, section 5209, Burns' R. S. 1894.)

In 1883 (Acts of 1883, p. 182, section 5216, Burns' R. S. 1894), an act authorizing them to indorse and guarantee the bonds of other railroad companies.

In 1855 (Acts of 1855, p. 156, section 5220, Burns' R. S. 1894), an act authorizing them to compromise with the mortgagees.

In 1852 (Acts of 1852, p. 358, as amended, section 5052, Burns' R. S. 1894), the legislature passed an act for the incorporation of manufacturing and mining companies, etc.

In 1875 (Acts of 1875, p. 107, section 5053, Burns' R. S. 1894), it also passed an act for the encouragement of manufacturing and mining companies.

In 1893 (Acts of 1893, p. 162, section 5064, Burns' R. S. 1894), it passed an act authorizing the issuing of preferred stock of manufacturing, etc., companies.

And in 1863 (Acts of 1863, p. 48, section 5075, Burns' R. S. 1894), it passed an act supplemental to the original act.

And in 1867 another supplemental act was passed. (Acts of 1867, p. 155, section 5078, Burns' R. S. 1894.)

In 1865 (Acts of 1865, special session, p. 134, section 5081, Burns' R. S. 1894), an act defining the powers of certain companies organized under the law.

And in 1883 (Acts of 1883, p. 129, section 5087, Burns' R. S. 1894), an act granting further powers to manufacturing companies in regard to taking stock in other companies.

And in 1889 (Acts of 1889, p. 38, section 5099, Burns'

R. S. 1894), an act declaratory of the meaning and effect of the word "mining" in the law.

And in 1891 (Acts of 1891, p. 423, section 5111, Burns' R. S. 1894), an act supplemental to the acts then in force.

So with insurance companies. The general law was passed under the title: "An act for the incorporation of insurance companies, defining their powers and describing their duties," approved June 17, 1852. (R. S. 1852, p. 331, section 4839, R. S. 1894.)

In 1891 (Acts of 1891, p. 375, section 4894, Burns' R. S. 1894), a separate act was passed conferring certain powers on officers of the company.

And in 1865 (Acts of 1865, p. 114, section 4895, Burns' R. S. 1894), a supplement act was passed.

And in 1883 (Acts of 1883, p. 203, section 4897, Burns' R. S. 1894), an act for governing certain life insurance companies was passed.

And so with the liquor law of 1875. The general law was passed March 17, 1875 (Acts of 1875, special session, p. 55, section 7276, Burns' R. S. 1894).

In 1889 (Acts of 1889, p. 288, section 7280, Burns' R. S. 1894), an act was passed governing appeals from the action of the board with reference to the granting of licenses.

Each of these acts might be said to be as amendatory of the original and existing laws upon the same subject as is the statute in controversy. This continued and repeated practice of the legislature, unquestioned for a period of over forty years, becomes a potent factor, and lends much strength to an interpretation of the constitution favoring the authority of the general assembly to enact, in the manner it did, the law under consideration. Were we in doubt of this legislative right, we should feel obligated to be controlled

by such a practical exposition. *Hovey, etc.*, v. *State, ex rel.*, 119 Ind. 386; *French* v. *State, ex rel.*, 141 Ind. 618.

It is obvious, we think, that the provisions of the law of 1875 are not repealed by that of 1895, but that the latter only provided supplemental provisions for the better regulation and restriction of the traffic in intoxicating liquors.

The next insistence is, that the title to the act is insufficient, because it is in contravention of Art. 4, section 19, of the Constitution.

This contention, we think, is untenable. There has been a disposition manifested by this court from time to time, when this same question has been presented, to liberally construe this constitutional mandate, rather than to embarrass legislation by a construction, whose strictness is unnecessary for the accomplishment of the beneficial purpose for which it was designed. The history and reason for the insertion of this provision in the organic law of the State, are well understood, and have been so often given by this court in its decisions, that any further extended statement is thereby rendered unnecessary.

The mischiefs intended to be prevented by section 19 were well stated by Judge Frazer, in *Hingle* v. *State*, 24 Ind. 28, as follows:

"*First*, The passage of any act under a false and delusive title, which did not indicate the subject-matter contained in the act; a trick by which members of the legislature had been deceived into the support of measures in ignorance of their true character.

"*Second*, The combining together in one act of two or more subjects, having no relation to each other; a method by which members, in order to procure such legislation as they wished, were often constrained to support and pass other measures obnoxious to them, and possessing no intrinsic merit."

The word "subject," as used in this section, indicates

the thing about which legislation is had, and the word "matters" the things which are secondary, subordinate, or incidental. *Hingle* v. *State, supra.* The subject of the act in question is "The better regulation and restriction of the sale of intoxicating liquors." The matters properly connected therewith are:

*First.* Providing penalties for a violation of the act, and providing for its enforcement.

*Second.* Providing for a remonstrance against the granting of licenses.

*Third.* Conferring jurisdiction upon certain courts for the violation of this and other laws upon the subject of selling intoxicating liquors.

The subject is clearly expressed in the title. The latter fully indicates the purpose of the legislation, and informs all persons as to the provisions of the act. The matters embraced in the body of this statute are details of the method by which the sale of intoxicating liquors is to be "better regulated and restricted." All of them, it appears to us, are germane to the subject, and appropriately and properly connected therewith. The following decisions support our conclusion: *State* v. *Newton,* 59 Ind. 173; *Hedderich* v. *State,* 101 Ind. 564, 51 Am. Rep. 768; *Shipley* v. *City of Terre Haute, etc.,* 74 Ind. 297; *Indiana, etc., R. W. Co.* v. *Potts,* 7 Ind. 681; *Robinson* v. *Skipworth,* 23 Ind. 311; *Bright* v. *McCullough, Treas., etc.,* 27 Ind. 223; *State* v. *Adamson,* 14 Ind. 296; *State, ex rel.,* v. *Sullivan,* 74 Ind. 121; *Jett* v. *City of Richmond,* 78 Ind. 316; *Kane* v. *State, ex rel.,* 78 Ind. 103; *Barnett* v. *Harshbarger, Admr.,* 105 Ind. 410; *City of Indianapolis, etc.,* v. *Huegele,* 115 Ind. 581. See also *Bank of the State* v. *City of New Albany,* 11 Ind. 139; *Reams* v. *State,* 23 Ind. 111; *Peachee* v. *State,* 63 Ind. 399; *Elder* v. *State,* 96 Ind. 162; *Shoemaker, Aud.,* v. *Smith,* 37 Ind. 122; *State, ex rel., etc.,* v. *Board, etc.,* 26 Ind. 522.

We are next confronted with a more difficult prop-osition, the invalidity of section two; the question, in the main, is not as to the power of the legislature to prescribe the conditions or prohibit the acts which it has, in the section in dispute, but it is one applying to the arbitrary manner in which it is claimed the board of commissioners is authorized by the proviso of this section to exercise the power of awarding a permit to an applicant to conduct other business in connection with the sale of his liquors. It is the opin-ion of the majority of the court that the validity of that part of the statute embraced within this proviso, can be sustained. From this holding the writer of this opinion is compelled to dissent, for the reasons given in his dissenting opinion. The views of the majority of the court upon this question are stated as follows:

All statutes *in pari materia* are to be construed to-gether. *Earl of Ailesbury* v. *Pattison,* 1 Douglas 28.

The legislature is presumed to have had former statutes before it, and to have been acquainted with their judicial construction, and passed new statutes on the same subject with reference thereto. *Steel* v. *Lineberger,* 72 Pa. St. 239.

When a number of statutes, whenever passed, relate to the same thing or general subject-matter, they are to be construed together and are *in pari materia.* *U. S.* v. *Freeman,* 3 Howard (U. S.), 556-564; *Ferguson* v. *Board, etc., Monroe Co.,* 71 Miss. 524; *Commonwealth* v. *Sylvester,* 13 Allen (Mass.), 247; *City of Louisville* v. *Commonwealth,* 9 Dana (Ky.), 70; *State* v. *Clark, Aud.,* 54 Mo. 216; *Roff, etc.,* v. *Johnson,* 40 Ga. 555; *Linton's Appeal,* 104 Pa. St. 228; *Perkins* v. *Perkins,* 62 Barb. 531; *United Society* v. *Eagle Bank,* 7 Conn. 456; Black on Interp. of Laws, section 86.

We quote from Black on Interp. of Laws, p. 206:

"It is a phrase applicable to public statutes or general laws, made at different times, and in reference to the same subject. Thus, the English laws concerning paupers and their bankrupt acts are construed together, as if they were one statute and as forming a united system. * * * Such laws are *in paria materia.* To illustrate further, all the statutes of the same State relating to the property-rights and contracts of married women, removing their common law disabilities, authorizing them to manage their separate estates, to engage in business, etc., are to be read and construed together as constituting one system. Though they may have been passed at different times, successively advancing to a standard the opposite of that of the common law, they are all strictly *in pari materia*, and any doubt or ambiguity in one should be cleared up by reference to the terms, the purpose, and the policy of the rest. Again, an act authorizing married women to dispose of their property by will is *in pari materia* with the general statute relating to the execution and proof of wills. * * * So also, all the laws of the State, whenever passed, relating to the subject of the regulation of the liquor traffic are *in pari materia.*"

The act known as the Nicholson law is supplemental to and *in pari materia* with the license law of 1875, and the same are therefore to be construed together.

It is also the rule that whenever the statute can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts. *Warren, Aud.,* v. *Britton, Treas.,* 84 Ind. 14; *Campbell* v. *Dwiggins, Treas.,* 83 Ind. 473; *Hays* v. *Tippy,* 91 Ind. 102; *State, ex rel.,* v. *Roby,* 142 Ind. 168, 51 Am. St. Rep. 174; *Newland* v. *Marsh,* 19 Ill. 376; *Dow* v. *Norris,* 4 N. H.

16, 17 Am. Dec. 400; *Grenada Co.* v. *Brogden,* 112 U. S. 261, and cases cited on p. 269; *Marshall* v. *Grimes,* 41 Miss. 27, 31.

It should not be assumed that the law-making department of the government intended to usurp or assume power prohibited to it, but in all cases the contrary presumption prevails.

Judge Cooley, in his work on Const. Lim. (6th ed.), p. 218, says: "For as a conflict between the statute and the constitution is not to be implied, it would seem to follow, where the meaning of the constitution is clear, *that the court, if possible, must give the statute such a construction as will enable it to have effect.* This is only saying, in another form of words, that the court must construe the statute in accordance with the legislative intent; since it is always to be presumed the legislature designed the statute to take effect, and not to be a nullity."

The principle upon which is based the regulation of the liquor traffic is found in the police power of the State, and it should be remembered, in construing all statutes on that subject, that no one possesses an inalienable or constitutional right to keep a saloon for the sale of intoxicating liquors. *Sherlock* v. *Stuart,* 96 Mich. 193.

"To sell intoxicating liquor at retail is not a natural right to pursue an ordinary calling." Black Intox. Liq., section 48.

The act of 1875 does not define what constitutes fitness or unfitness. Said act is in full force and effect, except as modified by the act of 1895. The question of the fitness or unfitness of an applicant remains for the board of commissioners to determine, under said act, unless a remonstrance, signed by a majority of the legal voters, is filed, as required by section 9 of the act of 1895.

The question of the fitness of an applicant, under the act of·1875, was not a question of law, but one of fact, to be determined by the board of commissioners, or the trial court on appeal. *Pelley* v. *Wills*, 141 Ind. 688; *Hardesty* v. *Hine*, 135 Ind. 72; *Stockwell* v. *Brant*, 97 Ind. 474; *Keiser* v. *Lines*, 57 Ind. 431.

In determining· the question of the fitness or unfitness of an applicant, under said act prior to the act of 1895, it was proper for the board of commissioners tc take into account the place where he desired to sell intoxicating liquors, its proximity to the courthouse, schoolhouses, churches, and all other surroundings, for the reason that it might be that only a man possessed of an extraordinary degree of circumspection and caution could fitly conduct the business at that place on account of the situation and surroundings. *Eslinger* v. *East*, 100 Ind. 434.

Construing section two, of the act of 1895, with sections three and four, of the act of 1875, concerning the fitness of an applicant to be intrusted with the sale of intoxicating liquors, the power given the board to grant or refuse a license to sell intoxicating liquors and carry ·on some other kind of business in the same room, is not an arbitrary one.

If an applicant for a license to sell intoxicating liquors also desires to carry on any other or different business in the same room, and states such fact in his application, as required by the last proviso to section two of the act of 1895, it is a question of fact for the board of commissioners to determine whether such applicant is a fit person to be intrusted with the sale of intoxicating liquors, under the laws of the State, and carry on the other or different business stated in the application in the same room. If the board find, from the evidence, that he is, the license is granted, as prayed for.

But if the applicant is found to be a fit person to be intrusted with a license to sell intoxicating liquors in a room separate from any other business of any kind, and not fit to be intrusted with the sale of intoxicating liquors in the same room with the other business stated in the application, a license would only be granted to sell intoxicating liquors in a room separate from any other business of any kind, the same as if the applicant had not taken any steps under the last proviso of section 2.

If, however, the board finds he is not a fit person to be intrusted with the sale of intoxicating liquors in a less quantity than a quart at a time, in a room separate from any other business of any kind, under the license laws of this State, his application would be refused.

So construed, said proviso is not open to the objection that it confers absolute or arbitrary power upon the board of commissioners, but all applicants are entitled to the same privileges upon the same condition, that of fitness.

In determining the fitness of the applicant in such case, locality and surroundings, including the other kind of business he desires to carry on in connection with the sale of intoxicating liquors, are proper matters for consideration.

So that whether the application is for a license to sell intoxicating liquors alone, or contains a request under the last proviso to said section two, the question is whether the applicant is a fit person to be intrusted with the sale of intoxicating liquors, in the manner and with the other business, if any, set forth in his application, considered with reference to the location and all the surroundings.

It would seem that, under the doctrine declared in *City of Indianapolis* v. *Bieler*, 138 Ind. 30, and author-

ities cited on p. 38, that even if the last clause to section two was unconstitutional, that the remainder of said section would be constitutional. See also, *Penniman's Case*, 103 U. S. 714; *Presser* v. *Illinois*, 116 U. S. 252.

The validity of the proviso in controversy being upheld, it is manifest that section two is not open to the other objections urged against it by counsel for appellee. The section, we think, prescribes, or imposes, valid restrictions upon the dealer in liquors as to the place wherein the same are sold. First, in requiring him to conduct the business of selling his liquors in a room where no other business is carried on, and, second, in prohibiting devices for amusement or music from being permitted therein. Each of these provisions, we think, define a separate public offense, the violation of any one of which will subject the offender to the penalty of section four of the act in controversy.

This section recognizes the right of a holder of a license to carry on thereunder the business of retailing liquors. In the absence of the permit, provided for by the second proviso, the requirements of the section confine the sale of liquors to a room separate from any other business, except that of selling cigars and tobacco. By its operation it also removes from the saloon all such allurements as music and devices for amusement of any kind, by the means of which both the old and the young might be induced to enter and loiter therein, to their own detriment and that of the public. Surely the power of the legislature to impose such restrictions upon the vendor of intoxicants cannot be successfully denied.

We cannot concur, with counsel for the appellee, that section three is open to the objections urged against it. The contention that the legislature is not

authorized to make certain facts *prima facie* evidence of guilt cannot be sustained. This question was fully considered by this court in *State* v. *Beach*, at last term (Ind. Sup.), 43 N. E. Rep. 949, and decided adversely to the claim of appellee. The power to prohibit the sale of intoxicating liquors in the interest of public safety or welfare during certain prescribed periods is not denied. The legislature, possessing this right, as it unquestionably does, may further exercise or extend it so as to require a proprietor of a liquor saloon to securely close the same, and permit no person to enter therein, as provided by this section, during the times when the sale of intoxicating liquors is forbidden. This legislative power is recognized and settled in the case of *Decker* v. *Sargeant*, 125 Ind. 404; *Davis* v. *Fasig*, 128 Ind. 271.

As the closing features of section three apply only to the prohibited days and hours, we fail to recognize how any great hardship can result from the enforcement of this law. In answer to the contention that the enforcement of the requirements of this section might incidentally result in interfering, during such interdicted time, with other business that may be conducted by the proprietor in the same room where such liquors are sold, or may restrict him in the enjoyment in his own house of the society of his friends, it may be said that when he accepted his license, under the statute, and embarked in the sale of intoxicating liquors thereunder, he must be deemed to have consented to all proper conditions and restrictions which had been imposed by the legislature, or which might in the future be imposed in the interest of the public morals and safety, relative to the traffic in such liquors, or to the place wherein he was granted a permit to sell the same, notwithstanding their burdensome character. *Decker* v. *Sargeant, supra;* Black on Intox. Liq., section 50.

A license to engage in the liquor traffic is not a contract or grant, but a mere permit, and the applicant who receives it does so with the knowledge that it is at all times within the control of the legislature. *McKinney* v. *Town of Salem*, 77 Ind. 213; *State, ex rel.*, v. *Bonnell*, 119 Ind. 494; *Moore* v. *City of Indianapolis*, 120 Ind. 483; Black on Intox. Liq., section 51.

The rule of law as above asserted, applies with equal force in support of the validity of the restrictive features of section two.

It is true, that the part relative to the exclusion of persons is somewhat sweeping, making but one exception; however, criminal statutes are not always literally construed, and possibly an emergency might arise of great necessity, to admit some one other than those mentioned in the section, and while such admission might infringe upon the letter of the statute, it would not come within its spirit, and the court, under the particular circumstances, might make the necessary exception, but as to this point we do not decide. See *Donnell* v. *State*, 2 Ind. 658; *Hooper* v. *State*, 56 Ind. 153. We therefore sustain the validity of section three, and adjudge that it defines a public offense.

Another objection is urged against sections three and four, because of the following language in the latter: "For a violation of this or either of the foregoing sections of this act, the defendant shall be fined," etc. It is contended that by this clause no penalty is fixed for the violation of the provisions of any section, unless all the provisions thereof have been violated. The violation of a section of this act may be, in part or as a whole, and in either case the penalty provided in section four is prescribed. In *Miller* v. *State*, 3 Ohio St. 475, it was held that a violation of either of the sections of the statute therein involved, subjected the accused to the penalty mentioned

in another section, which provided for a penalty for
the violation of all.   There is no merit in the objec-
tions urged by appellee in this respect.  See *Jessup* v.
*State*, 14 Ind. App. 257.

The validity of section nine of the act, as we have
heretofore stated, is called in question, upon the
grounds, that it is not a matter properly connected
with the subject of the statute; that it constitutes
local prohibition; and further, that it delegates legis-
lative power to the people to suspend the general
license law of the State.  It is further insisted that the
title in no way indicates that there will be found in
the act a section authorizing the majority of the legal
voters in the several townships and wards, to estab-
lish prohibition therein.   We are of the opinion that
the validity of this section cannot be successfully as-
sailed upon any of these grounds.   In furtherance of
what we have heretofore said, in regard to the suf-
ficiency of the title, we may say, that the subject ex-
pressed in the title is not only "to better regulate,"
but "to better regulate and restrict the sale of intox-
icating liquors."   Under this title, we think, it was
competent to embody in the act the provisions of sec-
tion nine, making the granting of a permit by the
board of commissioners subject to the condition and
restriction that no remonstrance against the same,
signed by a majority of the legal voters of the specified
districts, was filed with the auditor three days prior to
the beginning of a regular session, at which, the appli-
cation therefor was made.   This provision was not
enacted with the view of absolutely prohibiting the
sale of liquors, but only as a restriction to the grant-
ing of a license, and, thereby, better restraining the
traffic in intoxicating liquors.   All laws which regu-
late, or restrict, the sale of such liquors, by imposing
burdens or conditions upon the business, are in their

nature or character to an extent, at least, prohibitory. *Welsh* v. *State*, 126 Ind. 71. In the case last cited, it is said: "Acting upon the just assumption that the unrestricted sale of intoxicating liquors results in much evil, and that it is detrimental to society, the law-making power of each State in the Union has, in the exercise of its police power, assumed to control, regulate or prohibit the business, as seemed to it best."

Counsel place much stress upon these words in the title: "Providing for remonstrance against the granting of license for the sale of the same." We do not think it was necessary to employ these words in the title, as the provisions in regard to the remonstrance, found in the body of the act, was within the scope of the title, being matter properly connected with the subject. The license law of 1875 provides for a remonstrance by a voter against the granting of a license thereunder, for certain prescribed reasons, but the word remonstrance is not in the title of that act, and there is nothing to indicate that such a provision will be found in the body of the law, except in the general scope of the subject. It is an undisputed fact that county commissioners have no power to grant a license to anyone to retail intoxicating liquors, except as it has been expressly conferred upon them by statute. That the legislature is invested with full power to regulate and restrict the jurisdiction of this tribunal, cannot be successfully denied. Under the license act of 1875, certain prescribed conditions, or restrictions are imposed, relative to the authority of the board of commissioners to grant a license. The board is required to find that the person applying possesses the moral qualifications contemplated by the act, as will fit him to be intrusted thereunder with a license, and that he is not in the habit of becoming intoxicated. The failure to establish these facts, de-

feats the applicant. By section nine, another condition, or restriction, is imposed upon the jurisdiction of the board relative to granting a license to retail liquors to any applicant, namely, the fact that a remonstrance against him, signed by a majority of the legal voters of the township or ward wherein he intends to engage in the sale of such liquors, has been filed with the auditor, three days before the beginning of the regular session of the board at which the application for the license is to be presented. In the event this fact is found to exist, the jurisdiction of the commissioners over the matter, by virtue of the law, is terminated, and it is made unlawful for them to grant the license to the applicant. But, on the contrary, if this fact is found not to exist, the board can then proceed to inquire, according to law and the evidence, into the fitness and right of the applicant to be intrusted with the desired license. In *Goresch* v. *State*, 42 Ind. 547, the constitutionality of the liquor act of 1873, known as the "Baxter Law," was called in question upon similar objections which are urged against section nine.

Section two, of this law, required that the petition of an applicant for a permit to sell liquors thereunder, certifying as to his residence and fitness, must be signed by himself, and also by a majority of the legal voters of a township or ward, and filed with the auditor twenty days before the term of any regular session of the county commissioners. The section then provided as follows: "The board shall examine such petition, and if satisfied the same is in proper form, and that it has been signed as hereinbefore required, shall direct a permit to be issued," etc. The validity of section two was sustained by the decision in the case last cited. This court there said: "The ground taken is, that the law is not in force in

The State *v.* Gerhardt.

any township, town, or ward of a city, until the requisite number of voters have signed a petition, and that it is the act of such voters in signing the petition which makes the law. In our judgment, this position is untenable. We cannot regard the act as conferring upon the petitioners legislative authority in any sense of these terms. It might as well be said that the law which authorizes the laying out of a public highway by authority of the county commissioners, upon the petition of a designated number of persons, was unconstitutional, because it conferred upon such petitioners legislative authority. * * * Thus the qualifications and fitness of each person, as well as the wish of the petitioners for the establishment of the business in their neighborhood, are at once settled by the voice of those who are most intimately concerned. If they do not thus open the door to the traffic, the law provides that, so far as that applicant is concerned, it shall remain closed. This is a species of self-government which by the law is placed in the hands of the people to be exercised by a majority of them according as they may judge to be for their best interest. It is believed that the privilege of retailing intoxicating liquors has never, under any law which has ever been enacted in this State, been granted unconditionally. That the applicant should comply with certain conditions, such as the presentation of a petition signed by a designated number of persons, make proof of his fitness to have a license, or execute a bond, etc., has been a feature of every law which has ever been in force in this State. To comply with such condition has not been heretofore supposed to be an exercise of legislative authority."

The decision in that case, upon the question involved, must be accepted as decisive of the one now under consideration. The principle at issue in that

appeal, upon section two of that act, and the one aris-
ing under section nine of the law of 1895, we think,
are substantially the same. By virtue of the required
petition being filed under the "Baxter Law" twenty
days before the regular term of the board, the law
directed the permit to be issued. Under the section
now in controversy, by virtue of the required remon-
strance being filed three days before the regular ses-
sion, it is rendered unlawful for the board to grant a
license to such applicant therefor. By the former
act the burden was cast upon the applicant to secure
the required number of voters to sign his petition. In
the latter, it is upon the remonstrators to obtain the
requisite number to sign the remonstrance in order to
defeat the granting of the license. The rule is gen-
erally asserted, and is not denied, that the power in-
vested in the legislature to pass, repeal, or suspend
laws cannot be delegated to the people. By section
nine no authority is attempted to be lodged in the
voters to suspend the operation of any of the pro-
visions of the general license law of 1875. The result
of the remonstrance therein provided serves as a re-
striction or inhibition upon the jurisdiction of the
board to grant a license, under the act of 1875, to the
particular applicant, against whom the remonstrance
is directed. The section as it came from the legisla-
ture was a complete and perfect enactment, prescrib-
ing a rule or action, and, under like circumstances, it is
operative in all parts of the State. See *State, ex rel.*, v.
*Forkner* (Iowa Supreme Court), 28 L. R. A. 206, and
the many authorities there cited. The validity of the
two years' limitation in section nine, which debars a
defeated applicant thereunder from receiving a
license during said period, is not presented by any of
the records in this appeal, and is, therefore, not deter-

mined. But two questions remain which require consideration in this opinion, namely:

*First.* Has a remonstrant, after the expiration of the time within which a remonstrance may be filed, the absolute right without cause to withdraw from it, leaving the remonstrance, which theretofore had contained sufficient remonstrants to defeat the granting of the license, insufficient on account of the withdrawal of the signatures to accomplish the result?

*Second.* Does the remonstrance provided in section nine apply to the particular applicant whose application is then pending and against which it is addressed, or is it required to be general against the granting of a license to any applicant within the district under consideration?

The first of these, we think, must be answered in the negative. We have held that the power of the board of commissioners to grant a particular license, depends upon the fact whether three days before its regular session a remonstrance, signed by a majority of the legal voters of the township or ward, has been filed with the auditor. That, if the board finds this fact to exist, it could proceed no further in the matter, but must dismiss the application. The existence of this fact is manifestly jurisdictional, and, under a proper and reasonable interpretation of section nine, the right of a voter, or voters, to withdraw so as to leave a less number than is required by the law cannot be maintained. Until the beginning of this three days' period, whether the remonstrance has been placed on file or not, any remonstrator must be deemed to have the absolute right by some affirmative act of his own, to withdraw his name from such remonstrance. But if this right is not exercised prior to the beginning of the first day of this three days' period, it no longer

exists. In *Carr* v. *Boone*, 108 Ind. 241, a drainage petition was pending, and the report of the commissioners had been filed and confirmed. Thereafter one of the petitioners moved to dismiss the proceedings, but his motion was denied by the lower court. This court, in passing upon the question, on page 245 of the opinion, said:

"This motion came too late. Rights had been acquired and money expended on the faith of the order made upon the first report, and justice requires that a petitioner should not be allowed to destroy rights which his own act had been the means of creating. The case is not at all like that of an ordinary civil action, for, in such a proceeding as this, the public and many persons have a common interest, and he who sets on foot the proceedings cannot be permitted to end it to the injury of the public and others, by dismissing the petition." The following authorities also lend support to our conclusion upon this point: *State* v. *Reingardt*, 46 N. J. L. 337; *In re Sargeant*, 13 Nat. Bankruptcy Reg. 144; *Noonan* v. *Orton*, 31 Wis. 265; *Loring* v. *Brackett*, 3 Pick. 403; *Winslow* v. *Newlan*, 45 Ill. 145.

*In re Sargeant, supra,* the court said: "Where creditors in good faith join in a petition in bankruptcy, they cannot afterwards withdraw so as to leave a less number and amount of the creditors than is required by law, and deprive the court of jurisdiction, as to the matter of adjudication."

In answer to the second question, we are of the opinion that the remonstrance, provided for by section nine, has application only to some particular applicant, and does not contemplate a general remonstrance, but one directed against each individual who desires to secure a license. The language of the law is, "it shall be unlawful, etc., to grant such license to

such applicant therefor." In the act of 1838, which was under consideration in the case of *Woods* v. *Pratt*, 5 Blackf. 377, the wording of the statute was materially different, it read: "No license shall be granted to any person residing within any town or township where a majority of the freeholders in such town or township shall remonstrate against granting the same." The obvious meaning of that law was that, in the event of the required remonstrance, a license to retail liquors could not be granted to any person who might thereafter apply. As far as the operation of the act of 1838 was concerned, it was not necessary that there should be any applicant against whom the remonstrance might, at the time, be directed. It was against the evil of the traffic in liquors, and not especially against any particular applicant.

This is the construction placed upon it by the court in *Woods* v. *Pratt, supra.* It follows, therefore, that this decision is not controlling upon the question here involved.

Other minor questions, relative to practice, etc., involved in some of the causes consolidated with this appeal, will be decided separately in said causes. As heretofore said, the purpose of this opinion is to determine the validity of the law and to give an interpretation to the principal features of section nine.

It follows, from the holding of the majority of the court, that the judgment in this appeal of *State* v. *Gerhardt,* must be reversed, and it is so ordered.

HACKNEY and JORDAN, Judges, dissent in part.

## DISSENTING OPINION.

JORDAN, J.—I am constrained to dissent from that part of the conclusion of the majority of the court, whereby the constitutional validity of that portion of

section two, embraced within the last proviso is affirmed. To hold that the theory of this proviso has such an application to the fitness of an applicant, that the fact that the latter desires a license to retail liquors in a room wherein he intends to conduct other business, may be considered by the board, in deciding upon his right to be intrusted, under the act of 1875, with such license, cannot be maintained, except by a strained and unreasonable interpretation of the statute. The first section of the law had already specified certain facts to be considered by the county commissioners in the determination of the applicant's right, under the law, to receive a license, and it cannot be presumed that the legislature impliedly intended to engraft this proviso, upon other provisions of the law, applying to the fitness of one seeking to obtain a license to sell intoxicating liquors.

The unreasonableness of such an interpretation is apparent.

The first clause of the section in question requires that all persons holding a license, under the law of the State of Indiana, authorizing the sale of spirituous, etc., liquors in less quantities than a quart at a time, shall provide for the sale of such liquors in a room separate from any other business of any kind, etc. The section closes with a proviso as follows: "And provided further, That if such applicant for license desires to carry on any other or different business, he shall state the same in his application for license, and the same may be granted or refused by the board of commissioners hearing such application, and such permission shall be stated in the license if granted." For a failure to comply with the requirements of this section, the person so offending is made subject to the penalty of section four. It will be observed that the first clause of this section denies to all

persons holding a license to retail intoxicating liquors under the law of this State, the right to sell the same in a room wherein other business is conducted; while, by the latter part, which is the proviso, the question of either permitting or denying the right, or privilege, is submitted to the board of commissioners, without any fixed or prescribed limitations, terms, conditions, or standard of any kind by which the qualifications or fitness of the applicant to carry on other or different business in the same room where the liquors are to be sold, may be measured. This provision, I think, clearly attempts to invest these inferior officials with an arbitrary, undefined, and unlimited power to determine who, and who may not, be entitled to the privilege of conducting some other lawful business in the same room wherein intoxicating liquors are, under the law, permitted to be retailed. It is left, by this provision of the statute, as a mere matter of choice, to be exercised upon the part of the board of commissioners, as between two applicants for this permit, belonging to the same class, and on equal terms in all respects with each other, as to the fitness, conditions, etc., to decide as to which one the privilege shall be granted, and as to which one it shall be refused. Invested with this unfettered power, no measure of a legal right to the privilege could be attained. Each applicant would therefore depend for success upon some discretionary standard that might be erected by the particular board hearing the application. Under this undefined power, one man in a city or town, by means of influence, evil or otherwise, might possibly secure from the commissioners a grant to conduct a restaurant or the business of selling groceries in the same room where intoxicating liquors were sold in less quantities than a quart, while all other applicants, on equal terms, and similarly sit-

uated, might be denied the privilege. With the same logic, force, and reason it might be insisted that, under the constitution, the general assembly has the power to authorize boards of commissioners, upon granting a license to retail intoxicating liquors to arbitrarily prescribe the fee to be paid for the privilege, and likewise the conditions of the bond which the licensee should execute, and the character or situation of the room wherein the liquors are to be sold. Certainly, no one, in reason, could affirm the validity of such a law. The mere statement of such a proposition exposes the absurdity thereof. A statute is a rule of action, prescribed or declared by the legislature, and the manner in which it shall be applied to control the conduct of the citizen must be fixed by the legislative body with reasonable certainty.

Judge Cooley, in his work on Const. Lim. (6th ed), says : " Those who make the laws 'are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and countryman at plough.' This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments."

After prohibiting a licensed retailer of liquors from selling the same in a room in connection with other business, the section proceeds upon the theory that it may be proper for him to do so, and the question of permitting him to exercise this right is then submitted to the board for its determination, with no legally defined or fixed terms, conditions or circumstances, for its guidance in its decision as to the propriety of granting or refusing the desired privilege. The license law of 1875 fixed a standard of moral qualifications, fitness, and freedom from habitual intoxication, as a test of the legal

right of one to be granted a license to engage in the sale of liquors. This court, in the appeal of *Grummon* v. *Holmes*, 76 Ind. 585, held that where a remonstrance, under that act, was interposed against the granting of a license, that the immorality or other unfitness imputed therein to the particular applicant, ought to be set forth with such a degree of certainty as would advise him of the nature of the charge, so that he might be prepared to meet it. The principle here at issue has been considered by this court upon four other occasions, and each time the question has been decided adversely to the contentions of counsel for the State.

In *Bessonies* v. *City of Indianapolis*, 71 Ind. 189, the city sought to require that hospitals within its limits should be conducted only upon a permit to be secured upon notice and application to the council and board of aldermen. The ordinance was held invalid. Worden, J., on page 198 of the opinion, said: "It is apparent, that, under the ordinance, if valid, the common council and board of aldermen have the power, to grant or refuse the license in any given case, at their mere pleasure; and that no one can conduct or maintain a hospital within the city, however harmless or beneficial it might be, except by the consent of the common council and board of aldermen.

"It is not necessary to suppose that the common council and board of aldermen would abuse the power thus assumed by them, to grant or refuse the license, as they might think proper, or that they would exercise it otherwise than as they might think for the public good. It is sufficient to say, that, if the ordinance is valid, the common council and board of aldermen have it in their power to grant one person a license, and refuse another, under the same circumstances. No law could be valid, which, by its terms, would

authorize the passage of such an ordinance. The 23d section of the Bill of Rights provides, that 'The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.' What the legislature cannot do directly in this respect, it cannot authorize a municipal corporation to do."

In the case of *Bills* v. *City of Goshen*, 117 Ind. 221, an ordinance requiring a license to conduct the business of roller skating upon the payment of such a fee as the mayor or common council should determine in each particular case, was held invalid. The court quoted with approval from Horr and Bemis on Mun. Ordinances, this language: "The ordinance itself should specify every condition of the license, and the officer should be merely intrusted with the duty of issuing licenses."

In the case of *City of Richmond* v. *Dudley*, 129 Ind. 112, an ordinance placing restrictions upon the keeping of explosive oils, was held void for the reason that it permitted the exercise of arbitrary discrimination by the municipal officers. This court, after reviewing the decisions of several States, and the case of *Yick Wo* v. *Hopkins*, 118 U. S. 356, said: "It seems, from the foregoing authorities to be well established that municipal ordinances placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilege by all citizens alike, who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities, between citizens who will so comply."

The State *v.* Gerhardt.

In the *City of Plymouth* v. *Schulthcis*, 135 Ind. 339, the principle asserted in the cases last cited was again considered, and sustained. Cases which support the principle contended for by counsel for appellee are numerous. In *Yick Wo* v. *Hopkins, supra,* an ordinance of the city of San Francisco, prohibiting the conducting of laundries without a permit from the city's board of supervisors, except in buildings constructed of stone, was held to be void. Justice Matthews, in the course of the opinion, said: "It does not prescribe a rule and conditions for the regulation of the use of the property for laundry purposes, to which all similarly situated may conform. It allows without restriction, the use for such purpose of buildings of brick or stone; but, as to wooden buildings, constituting nearly all of those in previous use, it divides the owners or occupiers into two classes, not having respect to their personal character and qualifications for the business, nor the situation and nature and adaptation of the buildings themselves, but merely by an arbitrary line, on one side of which are those who are permitted to pursue their industry by the mere will and consent of the supervisors, and on the other those from whom that consent is withheld, at their mere will and pleasure. And both classes are alike only in this, that they are tenants at will, under the supervisors, of their means of living."

In the case of *Robison* v. *Miner & Haug*, 68 Mich. 549, certain provisions of a statute, authorizing local boards to reject the bond of a liquor dealer if the latter was known to them to be a person whose character or habits would render him unfit to conduct the business, and allowing a county treasurer to require a new bond upon any contingency that he should determine required it, were held to be unconstitutional. Camp-

bell, J., in considering the question, stated the principle as follows:

"If the law itself singled out any class or classes of persons as improper to be allowed to carry on this business, then the only inquiry would be as to the fact of anyone belonging to the forbidden classes. But, in such a case, without an admission of it, the applicant would certainly have the right to some hearing on the facts, and to be assured a hearing which could be examined by some court in case of capricious abuse. The subject was somewhat discussed in *Dullam* v. *Willson*, 53 Mich. 392 (19 N. W. Rep. 112), where many cases were referred to, showing the right of accused parties to know what they are accused of, and to have a hearing which will give them means of fairly meeting the charges. Without this there can be neither fairness nor uniformity in the operation of the law. If no standard is laid down, there may be as many scales of fitness and unfitness as there are boards. We have already had occasion, under the old law, to discover that boards desirous of preventing liquor-selling are ingenious in finding fault with bondsmen. There are very many excellent people who regard every seller of liquor as a bad man, unfit for social privileges, and others who hold peculiar views on other topics, which would render them harsh censors. If the statute had fixed the rule, there would be means of protecting parties against caprice and condemnation unheard. But when the same persons are to be judges of the proper causes of rejection, as well as of the fitness of persons under such causes, the law subjects everyone to the mere will of his neighbors, and gives him no rights whatever. No man's rights can be submitted, under a constitutional government, to the discretion of anybody." *Frazee's Case*, 63 Mich. 396, 6 Am. St. Rep. 310.

Sherwood, J., in a separate opinion, concurring with Judge Campbell upon this point, said: "I agree with my brother Campbell, this cannot lawfully be done under our form of government. It is within the province of the legislature to allow any person to engage in the business of making and selling intoxicating liquors. It is also within its power to limit the business to certain persons or classes, or to attach to its exercise conditions and such restrictions as it may deem proper for the best interest of the State and the people, not inconsistent with the spirit of the provisions of the constitution. But when conditions only are imposed, and all persons are permitted to engage in the business upon performing such conditions, the business remains a lawful one while it may be carried on, and such conditions must be reasonable. The legislature alone has the power to impose them, and when they relate to qualifications of the person who is to carry it on, involving his character and habits, requiring those of fitness for the business, *the law-making power should be specific in its requirements, and state particularly the elements entering into the necessary qualifications.* This should be done that persons desiring to engage in the business may know whether they possess such qualifications or not, and, if they are denied to them, that they may have the opportunity of showing that they do possess them. *The right to carry on a lawful business cannot be made to depend upon the arbitrary will or caprice of any man, or local board, as is done under this law. Some standard of qualification must be fixed by the law itself,* and then, whether the person who desires to engage in the business possesses the qualifications, measured by such standard, may be submitted to and determined by such local board as the legislature may designate." The italics are my own.

In the appeal of the *State* v. *Tenant*, 110 N. C. 609, 15 L. R. A. 423, the authorities are collected and reviewed by the court, and it was there held that the ordinance in question, forbidding any person to proceed with the erection of a building until a permit was issued to the owner, ought to have specified the conditions of the permit. Avery, J., there said: "It is equally clear, that if an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of aldermen, who may exercise it so as to give exclusive profits or privileges to particular persons."

Decisions upon this subject are many, but I do not deem it necessary to comment upon them or extend this opinion further by quotations therefrom. In addition to those, however, that I have cited, see the following: *O'Neil* v. *The American Fire Ins. Co.*, 166 Pa. St. 72, 26 L. R. A. 715; *City of Newton* v. *Belger*, 143 Mass. 598; *May* v. *People*, 1 Colo. App. 157, 27 Pac. Rep. 1010; *Baltimore* v. *Radecke*, 49 Md. 217, 33 Am. Rep. 239; *Anderson* v. *City of Wellington*, 40 Kan. 173, 10 Am. St. Rep. 175; *In re Frazee*, supra; *Tugman* v. *Chicago*, 78 Ill. 405; *Village of Braceville* v. *Doherty*, 30 Ill. App. 645; *Barthet* v. *City of New Orleans*, 24 Fed. Rep. 563; *Town of Lake View* v. *Letz*, 44 Ill. 81; *State* v. *Mahner* (La.), 9 So. Rep. 480; *City of East St. Louis* v. *Wehrung*, 50 Ill. 28; *City of Kinmundy* v. *Mahan*, 72 Ill. 462; *Horn* v. *People*, 25 Mich. 221; *Waite* v. *Garston, etc., L. R.*, 3 Q. B. 5; *State, ex rel.*, v. *Der-*

*ing,* 84 Wis. 585, 36 Am. St. Rep. 948, *Chicago* v. *Trotter,* 136 Ill. 430.

Under a constitutional government like ours the conduct of its citizens cannot be subjected to the arbitrary will of any individual, and anything that may tend to despotism, even in a mild form, is contrary to the genius of a free government. By section 23, of the Bill of Rights, it is seen that the general assembly is forbidden to grant to any citizen or class of citizens, privileges, etc., which upon the same terms shall not equally belong to all citizens. In *Cate* v. *State,* 3 Sneed 120, it was said of the term "privilege" that "It means something which cannot be enjoyed without legal authority, generally a license." In *French* v. *Baker,* 4 Sneed, 193, the definition given is this: "Any occupation which was not open to every citizen, but could only be exercised by a license from some constituted authority." The right of selling groceries, or conducting other lawful business in connection with the sale of intoxicating liquors is manifestly a privilege which cannot be granted under like conditions to some citizens and refused to others. Whether the legislature can prescribe or impose conditions upon the sale of intoxicating liquors is not the question involved, but the point at issue is whether the law-making power can confer upon county commissioners authority to grant the privilege of conducting some other business in conjunction with that of selling liquors to some of the State's citizens and refuse it to others, where there is no difference in condition, situation or qualification. That which the legislature cannot do directly, it cannot authorize to be done indirectly through the agency of some local board. I think it is clear that the provision embraced in the proviso of section two is at least antagonistic to the section of

the constitution above mentioned, and therefore void.

But it is insisted, by counsel for the State, that this part of the section may be adjudged void, and still full force and effect may be given to that portion of it which requires that the sale of the liquors shall be carried on in a room separate from any other business. I cannot concur with counsel in this view of the question. In *Griffin* v. *State, ex rel.*, 119 Ind. 520, it was said by this court: "It is undoubtedly the law that when the several provisions of an act are independent, some may stand although others may fall, but this occurs only when the provisions are clearly independent. As said by Shaw, C. J., in *Warren* v. *Mayor, etc.*, 2 Gray, 84, the rule that some portions of a statute may stand while others fall, 'must be taken with this limitation, that the parts, so held respectively constitutional and unconstitutional, must be wholly independent of each other.'" In the appeal of *State, ex rel.*, v. *Blend*, 121 Ind. 514, the rule was there asserted as follows: "It is quite well settled that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions, considerations, or compensations for each other, so as to warrant the belief that the legislature intended them as a whole, and if they could not be carried into effect the legislature would not have passed the residue independently of that which is void, then the whole act must fall. Cooley Const. Lim. (5th ed.), 213; *Meshmeier* v. *State, supra; State, ex rel.*, v. *Denny, supra; Griffin* v. *State, ex rel.*, 119 Ind. 520. On the other hand, it is equally well settled that when a part of a statute is unconstitutional, if by striking from the act all that part which is void, that which is left is complete in itself, sensible, capable of being executed and wholly independent of that which is re-

jected, the courts will reject that which is unconstitutional and enforce the remainder. Cooley Const. Lim. (5th ed.), p. 178; *Clark* v. *Ellis*, 2 Blackf. 8; *Maize* v. *State*, 4 Ind. 342; *State* v. *Newton*, 59 Ind. 173; *Ingerman* v. *Noblesville Tp.*, 90 Ind. 393."

In *Meshmeier* v. *State*, 11 Ind. 482, the rule, and the reason by which it was upheld, was well stated by this court, per Worden, J. It was there said: "But it would seem that the provisions of the statute held to be constitutional, should be substantially the same, when considered by themselves, as when taken in connection with other parts of the statute held to be unconstitutional; or, in other words, where that part of a statute which is unconstitutional, so limits and qualifies the remaining portion, that the latter, when stripped of such unconstitutional provisions, is essentially different, in its effect and operation, from what it would be were the whole law valid, it would seem that the whole law should fall. The remaining portion of the statute, when thus stripped of its limitations and qualifications, cannot have the force of law, because it is not an expression of the legislative will. The legislature pass an entire statute, on the supposition, of course, that it is all valid, and to take effect. The courts find some of its essential elements in conflict with the constitution, strip it of those elements, and leave the remaining portion, mutilated and transformed into a different thing from what it was when it left the hands of the legislature. The statute thus emasculated, is not the creature of the legislature; and it would be an act of legislation on the part of the courts, to put in force. The courts have no right thus to usurp the province of the legislature.

"The statute in question prohibits the retail of spirituous liquors (save for the purposes herein named) except upon two conditions: *First,* the consent of the majority of the voters of the township who may cast

their votes on that subject; and, *secondly,* giving bond and procuring a license.

"The condition respecting the vote, so enters into, qualifies, and forms a part of the prohibition, as to leave that an essentially different enactment, when stripped of such condition. The first condition qualifies the prohibitory feature as much as the second, and the law could as well be enforced with the second condition stricken out, as the first. In such case, the law would be purely prohibitory, and void, as has been held in reference to the statute of 1855. Suppose the condition in reference to giving bond and procuring license were void by the constitution. In such case, it will hardly be contended that it might be stricken out, and yet, that the balance would be substantially the same law, as when taken in connection with the part providing for bond and license. There is conceived to be no difference in principle between striking out the first and the second condition. They both, to a greater or less extent, enter into, and form a part of an entire provision. They are so blended with the entire enactment, that neither can be separated therefrom without destroying the harmony of the whole, and leaving the remaining portion to have an effect different from that shown by the whole law to have been the intent of the legislature. Upon this view of the statute, the case of *Washington* v. *State,* 8 Eng. (Ark.) 752, seems to be in point. The defendant was indicted for keeping a ten-pin alley without paying a license either into the State or county treasury. The court says:

'For the reasons here set forth, we are bound to decide that so much of the act of the 8th of January, 1845, as prohibits any person setting up a billiard table or ten-pin alley without paying a sum of money into the State treasury as a license therefor,

is repugnant to the constitution and void; because there is no power to do that indirectly which cannot be done directly; and the license is none the less a tax for the privilege of setting up such a table or alley, because collected or enforced by means of a criminal prosecution.

'The indictment in this case also contains a count for setting up and keeping a ten-pin alley, without first paying the sum of $25.00 into the treasury of Jefferson county. Although our opinion is that the general assembly may constitutionally impose, or authorize the county court to impose, such tax by conferring on them the power to grant licenses as a means of raising revenue for county purposes; and although the payment of the sum specified would seem to be an implied license to exhibit the table or alley, yet the whole scope and provisions of the act are so intimately blended that we do not feel warranted by any rule of judicial interpretation to separate these provisions in order to give to a part of the act an effect we cannot presume was intended. The whole enactment must therefore stand or fall together.' "

In Cooley's Const. Lim. (6th ed.), in a foot note on page 212, the rule is stated with much force as follows:

"It must be obvious, in any case where part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder that are allowable in support of a complete act when some cause of invalidity is suggested to the whole of it. In the latter case, we know the legislature designed the whole act to have effect, and we should sustain it if possible; in the former, we do not know that the legislature would have been willing that a part of the act should be sustained if the remainder were held void, and there is generally a presumption more or less strong to the contrary. While,

therefore, in the one case the act should be sustained unless the invalidity is clear, in the other the whole should fall unless it is manifest the portion not opposed to the constitution can stand by itself, and that in the legislative intent it was not to be controlled or modified in its construction and effect by the part which was void."

In the case of *Pollock* v. *Farmers' Loan, etc., Co.,* 158 U. S. 601 (the Income Tax Case), on this point the court said:

"And in the case before us there is no question as to the validity of this act, except sections 27 to 37, inclusive, which relate to the subject which has been under discussion; and as to them we think the rule laid down by Chief Justice Shaw in *Warren* v. *Charlestown,* 2 Gray, 84, is applicable, that if the different parts 'are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them.' Or, as the point is put by Mr. Justice Matthews in *Poindexter* v. *Greenhow,* 114 U. S. 270, 304: 'It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional, and another be declared inoperative and void, because unconstitutional; but these are cases where the parts are so distinctly separable that each can stand alone, and where the court is able to see, and to declare, that the intention of the legislature was that the part pronounced valid should be enforcible, even though the other part should fail. To hold otherwise would be to substitute, for the law

The State *v.* Gerhardt.

intended by the legislature, one they may never have been willing by itself to enact.' And again, as stated by the same eminent judge in *Spraigue* v. *Thompson*, 118 U. S. 90, 95, where it was urged that certain illegal exceptions in a section of a statute might be disregarded, but that the rest could stand: 'The insuperable difficulty with the application of that principle of construction to the present instance is, that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in view of the illegality of the exceptions.' "

The question is, can the invalid part of this section be eliminated and the remainder of it be enforced, or, in other words, is the void provision embraced in the proviso and that part of the section which forbids the sale of liquors in a room wherein other business is conducted, so distinctly separated and independent of each other that the latter can stand alone and thereby express the true intent of the legislature? I think that this question must be answered in the negative.

A proviso in a statute is said to be something engrafted upon a preceding enactment intended as an exception to it, or in some manner to modify it, and the general intent of the preceding provision will be controlled by the particular intent subsequently expressed. Its nature and appropriate office being to restrain or qualify some antecedent matter; it should therefore be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter, and it is to be construed with the preceding parts of the clause to which it is attached. This is said not to be an arbitrary rule to be enforced

at all events, but is based upon the presumption that the meaning of the law-maker is thereby reached. Sutherland on Statutory Construction, sections 222 and 223. See also Potter & Dwarris on Statutes, pp. 117 and 118. The expression of the legislative will, in the first clause, whereby the licensed dealer in liquors is required to conduct the sale thereof in a room separate from other business, must be interpreted and construed with the subsequent expression of such will, as it is disclosed in the same section by the proviso to the effect that the board of commissioners may grant permission to said dealer to carry on other business in such room. If this *proviso* does not modify or create an exception to the first clause, then it must be presumed that the legislature enacted it for a useless purpose, and this a court is not authorized to do. On the supposition that this section as it came from the hands of the law-makers was valid in all respects, it may·at least be suggested that in the event the State undertook to base a criminal prosecution thereon against a licensed retailer for failure to comply with the requirement to provide a room for the sale of his liquors in which no other business was conducted, under the rules of criminal pleading, it would be required to negative that he had been granted a permit as provided by said proviso. See *Brutton* v. *State*, 4 Ind. 602. And in the event the defendant had duly secured such a permit, and was the holder thereof at the time the alleged offense was committed. he undoubtedly, upon the trial, could introduce the same in evidence as a complete defense to such prosecution. Therefore, to hold that the invalid portion of this section may be stricken out and disregarded, and, that the other clause with which it is so closely and distinctly connected, can stand and be enforced, would evidently result in substituting for

the law intended by the legislature one that they may never have intended to enact. This, courts are not permitted to do. Certainly, under the rule, to which I have herein referred, I am warranted in the presumption and belief that had the legislature supposed that the grant of power conferred on the board of commissioners, by the proviso which it had engrafted upon the clause in question, was invalid, it would not have adopted the prohibitory features of the section relating to the carrying on of other business in the same room. For the reasons given by the many authorities cited, I am of the opinion that the clause, or part of the section in controversy, must fall with that which in my opinion is invalid.

It follows, therefore, for the reason that this provision of the section cannot be rescued from that which is void, no prosecution can be based thereon, and the judgment in this appeal should, I think, be affirmed.

HACKNEY, J.—I give my consent to all of the constructions of the act in question, as concurred in by the majority, excepting that with reference to section two of said act. As to that section I do not believe it to have been designed to relate to the personal fitness of an applicant to sell intoxicants, and I am of opinion that, for the reasons stated by Jordan, J., the proviso of said section is unconstitutional.